**Eleanor SHERRILL, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

**No. 83–1745.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 19, 1984.

Decided March 27, 1985.

Michael J. Cantor (argued), Shrauger & Dunn, Detroit, Mich., for plaintiff-appellant.

Joan Lesse Lowes, argued, Asst. Regional Atty., Chicago, Ill. (argued), Leonard R. Gilman, U.S. Atty., Pamela J. Thompson, Asst. U.S. Atty., Detroit, Mich., for defendant-appellee.

Before JONES, Circuit Judge, and PECK and BROWN, Senior Circuit Judges.

PER CURIAM.

This case is before the Court upon appellant's appeal from an order of the district court that, on cross-motions for summary judgment, affirmed the Secretary's denial of widow's insurance benefits under 42 U.S.C. § 402(e) (1982). Upon consideration of the issue presented by this appeal, we reverse the district court's order.

Appellant, Eleanor Sherrill, filed three applications for widow's insurance benefits under 42 U.S.C. § 402(e) (1982). All three applications were denied. Sherrill did not seek reconsideration of the first two applications but did seek reconsideration of the third application. Upon reconsideration, however, the third application was denied.

Subsequently, Sherrill requested and received a hearing. At the hearing, the Ad-

ministrative Law Judge (ALJ) heard the testimony of Sherrill and Dr. Benjamin Lewis. The ALJ found that "by a preponderance of the medical evidence [Sherrill had] osteoarthritis and back pain; mild degenerative arthritis of the knees; depression, moderate; hypertension; possible fibrositis syndrome; and multiple other health problems." Primarily because of Dr. Lewis' testimony, the ALJ further found that Sherrill's impairments neither singularly nor in combination, equalled the severity or duration of any impairment described in Subpart P, Appendix 1, Part A of 20 C.F.R. § 12.04 (1984) (List of Impairments). Consequently, the ALJ found that Sherrill was not disabled.

After the ALJ's finding became the Secretary's final decision, Sherrill sought judicial review. In the district court, both Sherrill and the Secretary moved for summary judgment. A magistrate recommended the grant of the Secretary's motion and denial of Sherrill's motion for summary judgment. The magistrate's recommendation was based primarily upon Dr. Lewis' testimony.

Upon receipt of the magistrate's recommendation, the district court reviewed "the file, record, the Magistrate's Report and Recommendation, and [Sherrill's] objections thereto...." After that review, the district court accepted the magistrate's recommendation and, therefore, ordered the denial of Sherrill's motion, and the grant of the Secretary's motion for summary judgment. In its opinion, the district court stated that Lewis was qualified "to render the opinion relied upon by the ALJ ...;" that Sherrill's "alleged disability [was] not purely or even primarily psychological;" and, that Lewis' opinion was uncontradicted by the medical evidence in the record. Sherrill disagreed and, therefore, appealed.

 The only issue before this Court is whether there exists substantial evidence on the record, as a whole, to support the finding that Sherrill is not disabled. Substantial evidence exists when there is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). On the whole record we cannot conclude that the Secretary's finding is supported by substantial evidence because Dr. Lewis' testimony did not rise to the level of substantial evidence.

Lewis testified that his review of Sherrill's file supported the following diagnosis: osteoarthritis of the lumbar spine. After stating that diagnosis, however, Lewis said "[i]n all fairness, [in] this area ... people of the same amount of skill might legitimately disagree as to what is age compatible and what is not." Yet, regardless of the legitimacy of contrary diagnoses among equally skilled physicians, Lewis opined that Sherrill's condition or conditions did not meet or equal any impairment described in the List of Impairments. Lewis supported his opinion with a twofold rationale. First, the medical evidence indicated that Sherrill's hypertension was a recent rather than persistent condition. Second, the medical evidence neither *neatly* or *"precise[ly]* fit" into nor satisfied the categories outlined by the List of Impairments.

Throughout his testimony, however, Lewis stated that his conclusions were judgment calls and that any two equally qualified physicians could reach different conclusions. For example, Lewis noted that although he concluded that Sherrill's impairments did not equal any impairment in the List of Impairments because he could not "pigeonhole" the evidence, the medical evidence could "fit best," into the category regarding "[r]ecurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory," Subpart P, Appendix 1, Part A 20 C.F.R. 12.04.A.2 (1983) or the category regarding "[p]ersistent depressive affect with insomina, loss of weight, and suicidal preoccupation." *Id.* at 12.04.A.3. Lewis also noted that "the difficulty [was that the List of Impairments required] a 'judgment call' ...," regarding "[h]ow

much is marked, how much is serious, and how much is deterioration and personal habit." As a result, Lewis further noted that "his opinion [was] a judgment call, and [that] other people may legitimately reach a different conclusion." Moreover, prior to that notation, Lewis had stated that there could exist legitimate disagreement between equally qualified physicians as to his initial diagnosis of osteoarthritis of the lumbar spine. Hense, Lewis' testimony was ambivalent.

In addition to rendering ambivalent testimony, Dr. Lewis "appeared and testified at the hearing in the capacity of medical advisor." Consequently, Lewis was not one of Sherrill's treating physicians; therefore, he testified regarding his review of the record rather than his course of treatment. As a result, in determining the question of substantiality of evidence, Dr. Lewis' testimony is entitled to less weight than the reports of any other physicians who examined Sherrill over a period of time. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

Nevertheless, the district court relied heavily upon the ambivalent testimony of a non-treating physician to the exclusion of evidence offered by psychiatrists who, in essence, stated that Sherrill is disabled because of her psychiatric impairment. The district court's reliance, however, is disconcerting not only because Dr. Lewis was a non-treating physician who rendered ambivalent testimony, but also because Lewis is a physician who specializes in internal medicine and sub-specializes in pulmonary disease. Dr. Lewis, therefore, is not a psychiatrist. Consequently, his testimony alone does not rise to the level of substantial evidence establishing the nonexistence of Sherrill's psychiatric impairment.

Accordingly, we REVERSE and award benefits.

BAILEY BROWN, Senior Circuit Judge, concurring.

I concur in the majority's opinion but write separately to emphasize what I believe to be the principal ground for reversing the Secretary's decision. It is my view that the testimony of Dr. Lewis, a board certified internist who specialized in pulmonary disease, would be substantial evidence that the claimant was not physically disabled but was not substantial evidence that she was not psychiatrically disabled.

Dr. Lewis testified that although Sherrill suffered from numerous health problems and had been seen by many physicians, her "major" problem was the psychiatric problem. After explaining why Sherrill's physical disorders did not meet or equal the listed impairments, Dr. Lewis stated that Sherrill's impairments came closest to meeting section 12.04—Functional nonpsychotic disorders.[1] In fact, Dr. Lewis' only basis for believing that Sherrill did not fall within section 12.04 was his opinion that her activities were not *markedly* restricted and her personal habits and ability to relate to others were not *seriously* impaired. More than once Dr. Lewis said that wheth-

1. 12.04 *Functional nonpsychotic disorders* (psychophysiologic, neurotic, and personality disorders; addictive dependence on alcohol or drugs). With both A and B:

A. Manifested persistence of one or more of the following clinical signs:

1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e.g. duodenal ulcer); or

2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; or

4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or

5. Persistent compulsive, ritualistic behavior; or

6. Persistent functional disturbance of vision, speech, hearing or use of a limb with demonstrable structural or trophic changes; or

7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either:

a. Seclusiveness or autistic thinking or

b. Pathologically inappropriate suspiciousness or hostility;

B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.

er or not Sherrill's psychiatric impairment fit into section 12.04 was "a judgment call;" and, despite his opinion that Sherrill failed to meet the criteria of section 12.04, Dr. Lewis testified that her psychiatric problems "would obviously severely impair" her ability to do "any kind of work."

Dr. Lewis possessed excellent qualifications, but he was an internist, not a psychiatrist, and he readily agreed the distinctions involved in determining whether Sherrill met the criteria of section 12.04 were basically psychiatric. The record before the ALJ contained evaluations by psychiatrists who had examined and treated claimant. The reports of these psychiatrists establish that Sherrill met the criteria of section 12.04 and therefore was disabled. In light of this substantial evidence from physicians trained in the field of psychiatry who had personally examined claimant, and because Dr. Lewis was a non-psychiatrist, non-examining physician who offered ambivalent testimony regarding claimant's psychiatric impairment, I agree that Dr. Lewis' testimony regarding claimant's psychiatric disability does not rise to the level of substantial evidence upon which the ALJ could properly base a finding of non-disability.