Clarence **STUDAWAY**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant.

No. 85–CV–70644–DT.

United States District Court, E.D. Michigan, S.D.

Dec. 4, 1985.

---

William M. Crawforth, Detroit, Mich., for plaintiff.

Roy C. Hayes, U.S. Atty., Detroit, Mich., for defendant.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING DEFENDANT'S DENIAL OF PLAINTIFF'S APPLICATION FOR SOCIAL SECURITY BENEFITS

LA PLATA, District Judge.

On January 24, 1984, Plaintiff, Clarence Studaway, filed an application for Social Security disability insurance benefits. Born in Memphis, Tennessee, in 1928, Plaintiff claimed that as of October 20, 1983, he had not been able to return to his position as a custodian at Wayne State University, as a result of several impairments: high blood pressure, bladder surgery, leg problems, and an injured back. Following two administrative denials of his application, Plaintiff requested a *de novo* hearing, which was held on September 25, 1984.

Granted a medical disability by his employer, Plaintiff testified that his custodial position involved various tasks, including the daily lifting of articles weighing forty to fifty pounds. He claimed that he has difficulty standing for more than forty minutes and walking more than two blocks. Unable to operate an automobile because of intermittent seizures, his daily activities consist of watching television and cleaning his first story apartment.

In a medical report dated April 4, 1984, Plaintiff's treating physician, Michael Kelly, M.D., indicated that he had received treatment for numerous maladies, including hypertension, heart disease, cirrhosis of the liver, and chronic obstructive pulmonary disease. Stating that Plaintiff smoked cigarettes over a thirty year period and was a frequent imbiber of alcohol, Dr. Kelly expressed an opinion that Plaintiff is permanently and totally disabled:

> Mr. Studaway is permanently and totally disabled by his medical problems. All of these problems are chronic and progressive in nature. The etiology must consider smoking and alcohol as primary. Certainly exposures from Dodge Main with respect to assembly line production, stress and the pulmonary irritants associated with spot welding have played a role both in his pulmonary and cardiovascular disease. Those, however, are likely secondary to the alcohol and cigarette usage. In as much as these problems are chronic and progressive, I don't believe that rehabilitation of either physical or vocational nature will be effective or appropriate.

A consulting physician of Defendant, A. Smiley, M.D., who found that Plaintiff's symtomatology was extensively related to cigarette and alcohol usage, determined that Plaintiff was able to squat, bend, and walk for fifty feet without assistance. Based on a physical examination, Dr. Smiley determined that Plaintiff's spine, chest, and joints were relatively normal, but that his high blood pressure was not well controlled.

Also testifying at the administrative hearing was a vocational expert, Don Harrison. The expert noted that janitorial positions vary from light to heavy in exertional levels. He expressed an opinion that, assuming Plaintiff's testimony were credible, no employment positions existed that Plaintiff could assume. In the event Plaintiff could perform light work, he estimated that 3,000 light custodial positions existed in the Detroit area, which would not involve operating a motor vehicle or working with moving machinery.

In a decision dated September 27, 1984, the administrative law judge (ALJ) concluded that, since custodians are able to function in working environments involving light levels of exertion, only, Plaintiff was capable of performing his previous relevant work. Determining that Plaintiff was not disabled within the framework of the Social Security Act, the ALJ based his decision on a Social Security ruling, 82–61, which prescribes that even though a claimant may not be able to resume his former position, he will not be deemed to be disabled if the duties of that position are significantly greater than the duties required by other employers.[1]

In *Jock v. Harris*,[2] the Plaintiff, formerly a supermarket cashier, claimed that she was disabled as a result of several maladies that precluded her from standing or walking for prolonged periods. In denying the application for benefits, the administrative law judge considered the fact that a cashier may perform her tasks in a sedentary position. Approving the reasoning and decision of the administrative agency, the *Jock* Court stated:

> Appellant contends that it was improper for the ALJ to take administrative notice of the existence of "sedentary" cashier positions. We disagree. Appellant's argument appears to rest on an assumption that her initial burden, in making a prima facie case of disability, was merely to show an inability to return to her prior job as a "supermarket cashier." But this view rests on too narrow a construction of the standard of eligibility for benefits. The relevant provision of the Social Security Act requires that an applicant for disability benefits demonstrates that "his physical or mental impairment or impairments are of such severity that he is ... unable to do his previous work ..." In this case, appellant's burden was to show an inability to return to her "previous work" as a cashier, not simply to her former job as a "supermarket cashier."[3]

In the matter at bar, premised on the testimony of the vocational expert that 3,000 positions exist in the Detroit area for light custodial work, the ALJ noted that Plaintiff, formerly involved in a custodial environment requiring the daily lifting of heavy articles, could perform janitorial tasks (1) involving light levels of exertion and (2) excluding the operation of a motor vehicle or the working with heavy machinery. Governed by the standard of review enunciated in 42 U.S.C. § 405(g) and a myriad of cases, including *Sherrill v. Secretary of Health and Human Services*,[4] this Court determines that substantive, competent evidence existed on the entire record to support Defendant's denial of Plaintiff's application for disability insurance benefits.

Consequently, Plaintiff's Motion for Summary Judgment is DENIED and De-

---

**1.** On January 10, 1985, the Appeals Council declined to grant Plaintiff's request for review. Plaintiff filed a Complaint for judicial review in this court on February 11, 1985.

**2.** 651 F.2d 133 (2d Cir.1981).

**3.** *Jock* at 135.

**4.** 757 F.2d 803, 804 (6th Cir.1985).

fendant's final decision denying disability insurance benefits to Plaintiff is AFFIRMED.