902 F.2d 33
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Janet F. ELLIOTT, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-1828.
 United States Court of Appeals, Sixth Circuit.
 April 26, 1990.
 
 Before RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant appeals the Secretary's denial of her application for disability insurance benefits. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Claimant Janet Elliott filed an application for disability insurance benefits on September 29, 1986, alleging a disability onset date of January 27, 1985 because of lumbar root syndrome and carpal tunnel syndrome. Her application was denied initially and on reconsideration. On August 12, 1987, a hearing was held before an Administrative Law Judge (ALJ).[1] On September 9, 1987, the ALJ issued a decision that claimant was not disabled because she was capable of performing a full range of sedentary work. The Appeals Council denied review and this decision became the final decision of the Secretary.
 
 
 3
 Claimant commenced an action for judicial review in the United States District Court for the Eastern District of Michigan. The case was referred to a United States Magistrate, who determined that the Secretary's decision was not supported by substantial evidence and recommended that the Secretary's decision be reversed. The district court held that there was substantial evidence to support a determination of disability from January 27, 1985, Elliott's alleged onset date, until August 29, 1985,[2] but that subsequent to August 29, 1985, the evidence did not support a disabling condition and disability benefits were therefore denied. Claimant timely filed this appeal.
 
 II.
 
 4
 Claimant was born on September 4, 1937. She completed two and one-half years of college. She worked for Michigan Bell Telephone from 1968 through January 1985 as a sales representative and as a sales and service clerk. At the hearing before the ALJ, claimant testified that she was involved in an automobile accident on about June 16, 1980, and subsequently developed pain in the lumbosacral area and a bulging disc. In 1982 claimant underwent a laminectomy with an excision of a herniated disc at L-4, L-5. Dr. Faremouth, an orthopedic surgeon, was claimant's treating physician from June 1982 through November 1986. In January 1983 a neurological examination was normal and Dr. Faremouth allowed claimant to return to work without restrictions. In 1985 claimant again experienced back pain that radiated into her left leg, and in July 1985, claimant underwent a hemilaminectomy, the surgical removal of a vertabral lamina at the L4-5 disc space with posterolateral effusion to the sacrum.
 
 
 5
 Claimant testified that she gradually improved after her operation but reached the peak of her improvement in 1987. She stated that she had low back pain that radiated into her hips and right leg. She stated that the pain was constant, but mild, and it was exacerbated by certain activities.
 
 
 6
 After the operation, in a follow-up examination in August 1985, Dr. Faremouth found that claimant was "doing very well" with straight leg raising only slightly positive on the left side. Examinations in the fall of 1985 revealed that the fusion "was taking," claimant was neurologically stable, and was much improved in her back. In April 1986, claimant began to complain of pain and tenderness in the back. However, her straight leg raising were again only slightly positive, she had good distal pulse, and the extensor hallucis longus (EHL) muscle of the legs was symmetrically strong.
 
 
 7
 In June 1986, Dr. Faremouth found that claimant was doing "reasonably well at her back." Her straight leg raising was negative, but her EHL's continued to be strong. In November 1986, Faremouth concluded that claimant was not capable of functioning on a daily basis, even at a sedentary job, as he did not feel "she can get to and from the job with reasonably consistent ease." At that time an x-ray showed that claimant's lumbosacral fusion was "taking" with narrowing at 4-5 and 5-1. An examination showed that straight leg raisings were negative, knee and ankle jerks were present and symmetrical, and EHL's were symmetrically strong.
 
 
 8
 In March 1987, Faremouth referred claimant to a physical therapist at the Center for Physical Rehabilitation for a functional capacity determination. The report stated:
 
 
 9
 The client exhibits limited trunk mobility and functional capacity at this time. The anticipation of, or perceived magnitude of pain appear to be the primary limiting factor in the client's performance.
 
 
 10
 The musculoskeletal exam revealed that her active trunk motion was limited by reports of low back pain, but neurological findings were inconclusive.
 
 
 11
 The B-100 lumbar spine test revealed that range of motion was limited in all three cardinal planes. Analysis of the torque curves fell well below those expected of normal females, but did not reveal any consistent irregularities to suggest a painful limitation to client's performance.
 
 
 12
 The I.S.T.U. test also identified no consistent irregularities, after analysis of the torque curves, to suggest a painful limitation to client's performance.
 
 
 13
 Her Functional Activities Evaluation, in which the therapist found that claimant could sit for 40 minutes in an eight-hour workday and stand for 15 minutes, did not coincide with what would have been expected based on her I.S.T.U. performance. The report stated that it was the apparent self-imposed constraints of claimant based on her perception of pain that limited her functional abilities.
 
 
 14
 The straight leg raising (SLR) were left positive for 45 degrees for left-sided low back pain. Lasague's test was negative on the left. SLR's and Lasague's test were negative on the right. The physical therapist's report concluded, "the client has inconclusive neurological signs at this time. Active trunk range is limited secondary to reports of pain. Much tenderness exists over the lumbosacral area, and some clinical signs may suggest contributory sacral involvement."
 
 
 15
 Dr. Faremouth reviewed this evaluation and concluded claimant would not be able to perform sedentary work unless her job allowed her to sit and stand at her discretion several times during an hour.
 
 
 16
 Dr. Lewis, a medical advisor, testified at the hearing that after claimant's second operation there was no evidence of neurological deficits or evidence of motor weakness. After listening to claimant's testimony and reviewing the record, Dr. Lewis concluded that claimant could not perform repetitive bending past 45 degrees, should not climb stairs, should avoid prolonged standing or walking and would be able to lift up to ten pounds, functional limitations which, the ALJ stated, are consistent with sedentary work.
 
 
 17
 A vocational expert also testified, stating that there were a significant number of jobs in the economy which claimant could perform considering age, education, work experience and physical restrictions assuming that she had the residual functional capacity for sedentary work.
 
 II.
 
 18
 This court has jurisdiction on appeal to review the Secretary's final decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam.).
 
 
 19
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d)(1)(A). If the claimant is working, benefits are automatically denied. If a claimant is not found to have an impairment which significantly limits her ability to work (a severe impairment), then she is not disabled. Since the ALJ found that claimant had not worked since 1985 and that she suffered from lumbar root syndrome and carpal tunnel syndrome, further inquiry was necessary. If a claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1; see 20 C.F.R. Sec. 404.1525(a). If so, benefits are owing without further inquiry. In the instant case, the ALJ found that claimant did not suffer from one of the listed impairments. In such a case, assuming the individual has previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978), the claimant establishes a prima facie case of disability. In the instant case, the ALJ found that claimant was not capable of returning to her particular occupation.
 
 
 20
 At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education and physical capacity, and the existence of jobs to match those qualifications, a claimant retains the capacity to perform a different kind of job. 42 U.S.C. Sec. 423(d)(2)(A); 20 C.F.R. Sec. 404.1520(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." 20 C.F.R. Sec. 404.1569. See 20 C.F.R. Pt. 404, Subpt. P, App. 2. In the instant case, the ALJ found that claimant retained the residual functional capacity to perform a full range of sedentary work, that she was a younger individual, was a high school graduate or more, that her previous work experience had been skilled or semi-skilled, and that she retained transferable skills. Accordingly, the ALJ found that the grid directs a conclusion that considering claimant's residual functional capacity, age, education, and work experience she is not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.22.
 
 III.
 
 21
 Claimant first argues that the ALJ erroneously made the finding that her allegations of debilitating pain were not credible. We reject this argument.
 
 
 22
 With respect to pain, this court has previously held that subjective complaints of pain may support a claim for disability. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986). To support such a claim, however, there must be objective medical evidence of an underlying medical condition in the record. Id. at 853. If this requirement is met, the court must also determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce disabling pain. Id.
 
 
 23
 In his findings, the ALJ determined that the medical evidence indicated that claimant suffered from lumbar root syndrome. This finding is supported by substantial medical evidence. Thus, claimant meets the first prong of the Duncan standard, i.e., there is objective medical evidence of an underlying medical condition. The ALJ also found that claimant's subjective complaints of disabling pain were not supported by objective evidence. This is tantamount to finding that Elliott has failed to meet the second prong of the Duncan standard.
 
 
 24
 We find that there is substantial evidence to support the Secretary's determination that the medical evidence concerning claimant's underlying condition does not corroborate the severity of claimant's alleged pain and the objectively determined medical condition is not of a severity that can reasonably be expected to give rise to the alleged disabling pain. Thus, neither of the alternative tests of the second prong of the Duncan standard is satisfied.
 
 
 25
 Although claimant's treating physician Dr. Faremouth stated that claimant was incapable of performing sedentary work because of her back condition, he based this conclusion on his belief that claimant could not get to and from work with reasonably consistent ease. We do not consider Dr. Faremouth's opinion about her travel difficulties to be sufficient evidence to support a determination of disabling pain. Although the first circuit has held that travel difficulties should be considered when the claimant's locomotive disabilities render it impossible or extremely difficult to move his or her body from home to work, Lopez Diaz v. Secretary of Health, Educ. and Welfare, 585 F.2d 1137, 1140 (1st Cir.1978), in the instant case no such showing has been made. Claimant conceded in a disability report and in her testimony that she performed household chores including cooking, dusting, shopping and laundry and that she drove short distances. These activities are inconsistent with a determination that claimant is not able to travel to and from work. The extent of a claimant's activities is a valid factor for the ALJ to consider in assessing claimant's credibility. See Crisp v. Secretary of Health and Human Servs., 790 F.2d 450, 453 (6th Cir.1986).
 
 
 26
 Moreover, the opinion of the treating physician, Dr. Faremouth, is not supported by clinical data in the record. "The medical opinions and diagnoses of treating physicians are generally accorded substantial deference.... only if the treating physician's opinion is based on sufficient medical data." Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985) (citations omitted). In the instant case, Dr. Faremouth's conclusion is not supported by his findings. After her second surgical procedure in July 1985, according to Dr. Faremouth, claimant was "doing very well." Knee and ankle jerks were consistently present bilaterally, straight leg raisings were negative, and claimant's EHL's were symmetrically strong. Neurology examinations were essentially normal, and x-rays showed that the fusion was "taking."
 
 
 27
 Although claimant had renewed complaints of pain from April through November 1986, her physical examination results according to Dr. Faremouth's notes remained much the same. Claimant's ankle and knee jerks were still present, her EHL's remained symmetrically strong, she had good distal pulses, and neurologically she was intact.
 
 
 28
 After reviewing claimant's functional capacity examination in October 1987, Dr. Faremouth was of the opinion that claimant could perform sedentary work only if the job allowed her to sit and stand at her discretion several times within an hour and again reiterated that he did not think she had the ability to get to and from work. Claimant argues that the Secretary gave insufficient weight to the functional capacity evaluation conducted by a physical therapist for the Center for Physical Rehabilitation and to Dr. Faremouth's conclusions based on it.
 
 
 29
 We find that the functional capacity evaluation does not provide substantial evidence to support the treating physician's conclusions. Although the evaluation found that claimant was limited on straight leg raising and range of motion, the therapist found that in areas where claimant was limited, the limitation was caused by claimant's "anticipation of or perceived magnitude of pain." In the therapist's evaluation, no neurologic abnormalities were cited. The therapist placed limitations on the claimant's ability to sit and stand, but stated that these limitations were not consistent with the objective tests, but were based on claimant's allegations of pain. Thus this report does not provide objective evidence confirming the severity of claimant's alleged disabling pain and does not indicate that the objectively determined medical condition is of a severity that can reasonably be expected to produce severe disabling pain. McCormick v. Secretary of Health and Human Servs., 666 F.Supp. 121, 123 (E.D.Mich.1987) (there must be medical signs that confirm that there is a medical condition to which the pain can be attributed), aff'd, 861 F.2d 998 (6th Cir.1988).
 
 
 30
 Claimant also contends that the Secretary incorrectly relied on the testimony of the medical advisor, Dr. Lewis, giving greater weight to the opinion of the medical advisor than to the testimony of her treating physician. Sherrill v. Secretary of Health and Human Servs., 757 F.2d 803, 804 (6th Cir.1985). In Sherrill, this court found that the district court improperly relied heavily upon the ambivalent testimony of the non-treating physician to the exclusion of evidence offered by the treating physicians. We find that the present case is distinguishable. In Sherrill, the medical advisor conceded that his conclusions about plaintiff's psychiatric problems were judgment calls and that any two equally qualified physicians could reach different conclusions. Id. Moreover, in order for the treating physician's opinion to be given greater weight than that of a non-treating physician, it must be supported by objective clinical data. LeMaster v. Weinberger, 533 F.2d 337, 340 (6th Cir.1976). In the present case, as previously discussed, the objective clinical data does not support Dr. Faremouth's assessment concerning claimant's ability to get to and from work and perform sedentary work and was thus accordingly given little weight by the Secretary.
 
 
 31
 In Atterbury v. Secretary of Health and Human Servs., 871 F.2d 567, 570 (6th Cir.1989), this court found that an opinion of a non-treating physician that is based on and supported by findings of claimant's own treating physician is substantial evidence in support of the Secretary's determination. In the present case, Dr. Lewis based his conclusions on evidence that was based on and supported by the findings of claimant's own treating physician--lack of neurological deficits or evidence of motor weakness.
 
 
 32
 For these reasons, we find that there is substantial evidence for the Secretary's determination that the second prong of the Duncan test has not been met and claimant's subjective allegations of severe disabling pain are not supported by the objective evidence in the record as a whole. We therefore affirm the decision of the district court.
 
 
 
 [1]
 Elliott previously filed an application for disability insurance benefits on March 11, 1986, alleging disability since January, 1985, due to back surgeries. Her application was denied initially and on reconsideraton and thereafter, plaintiff did not further pursue her administrative remedies. The ALJ decided, however, that since plaintiff almost immediately filed the current application, he would consider both cases together in this matter. Consequently, the ALJ reopened the matter pursuant to 20 C.F.R. Sec. 404.988(a)
 
 
 [2]
 The district court found that claimant had been disabled for only an eight-month period. In order to receive disability benefits, an impairment has to last or be expected to last for a continuous period of not less than 12 months. 42 U.S.C. Sec. 423(d)(1)(A). Thus, the district court found claimant was not entitled to an award of benefits since her period of disability was less than the statutorily prescribed 12 months