907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Terry UNDERWOOD, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-3986.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1990.
 
 Before WELLFORD and BOGGS, Circuit Judges, and HORACE W. GILMORE, District Judge.*
 PER CURIAM:
 
 
 1
 This is an appeal from the United States District Court that affirmed the determination of the Department of Health and Human Services that Plaintiff was not entitled to disability benefits and supplemental security income. For the reasons set forth, we affirm.
 
 
 2
 Plaintiff was born on March 28, 1947, and was 41 at the time of the Administrative Law Judge's (ALJ) decision. He has an 11th grade education, and from 1972 until 1984 worked as a truck driver for various employers. In 1984 and 1985, he worked as a general laborer, and stopped working on February 10, 1985, when he claimed he suffered from status post brain cerebellar stroke, positional vertigo, ataxia (unbalanced gait), claudication[1], an avoidant personality disorder, depression, a somatization disorder, hypertension, and diabetes.
 
 
 3
 On January 31, 1986, he filed a claim for disability benefits and supplemental security income. The application was denied initially, and on April 14, 1987, a hearing was held before the ALJ. On June 12, 1987, the ALJ denied Plaintiff's application, and on January 19, 1988, the Appeals Council remanded the case for consideration of Plaintiff's neurological and psychological conditions, and ordered independent examinations, which were performed on March 15, 1988.
 
 
 4
 A supplemental hearing was held on August 9, 1988, and on August 25, 1988, the ALJ issued his decision denying benefits. The Appeals Council denied Plaintiff's request for a review, and the District Court found substantial evidence in support of the Secretary's decision.
 
 
 5
 On appeal, Plaintiff does not challenge the finding that he is not physically disabled. He only challenges the determination that he is not mentally disabled. Therefore, the evidence regarding his physical ailments will not be presented.
 
 
 6
 * Prior to the first hearing before the ALJ, Dr. Glenda Roth, Ph.D., performed a psychological evaluation on August 26, 1986. Plaintiff reported that he had many friends whom he visited daily. While he seemed depressed, he denied having problems with depression, nervousness, or tension, and said he had never had a nervous breakdown. Plaintiff's attention span was normal. He maintained adequate eye contact, and his speech was intelligible. While he trusted "certain people," he stated that he had been around people he could not trust. His activities included camping, fishing, watching television, caring for his animals, and visiting his friends. Plaintiff was alert and oriented. His judgment seemed appropriate, he followed directions adequately, and appeared capable of conducting his living arrangements. Although Plaintiff complained of memory problems, he remembered the three items given to him. Intelligence testing revealed that plaintiff had a verbal intelligence quotient (IQ) of 88, a performance IQ of 94, and a full scale IQ of 89, which "just barely" placed him in the low average range of intellectual ability. Dr. Roth concluded that Plaintiff's ability to relate to others "may be somewhat impaired," and he may have some difficulty with stress. However, she noted that Plaintiff followed directions and performed tasks adequately. She diagnosed an avoidant personality disorder, and was inclined to rule out a possible somatization disorder and an organic personality syndrome.
 
 
 7
 In March 1987, again before the remand from the Appeals Council, Dr. Gerald Steiman performed a neurological examination for the Secretary. Plaintiff showed no confusion or memory loss, and Dr. Steiman stated that, based on Plaintiff's mental status, he would not expect Plaintiff's daily activities to be restricted. Plaintiff had normal speech, comprehension, and hearing.
 
 
 8
 In March 1988, as part of the examinations ordered on remand, Dr. Steiman reported that Plaintiff complained of unsteadiness if he walked too long, and subjective left-sided numbness and dizziness with exertion. Upon examination, Plaintiff showed no confusion or memory loss, and Dr. Steiman did not expect any restriction of daily activity based on his mental status testing. Dr. Steiman found Plaintiff to be of low average intelligence.
 
 
 9
 On March 15, 1988, Willis Driscoll, Ph.D., performed a psychological evaluation at the request of HHS. Plaintiff stated that he felt disabled because he experienced dizziness when he was under stress and when he walked. He further complained of anxiety and nervousness, but admitted he was only occasionally depressed. Although he appeared mildly depressed, his affect was appropriate, and he related adequately. Plaintiff had good eye contact, and cooperated well. While his speech was somewhat slow, it was relevant and coherent. Plaintiff's abstract reasoning was reasonably good. Plaintiff was oriented and his reality contact seemed good. He had only mild deficiencies in immediate and long-term memory, and his intermediate memory was good. His ability to concentrate was "quite good," and his judgment seemed adequate.
 
 
 10
 Plaintiff's test scores indicated his intelligence was in the dull-normal category. However, Dr. Driscoll stated that the Bender test suggested that Plaintiff's potential level of intellectual functioning was "significantly above the present findings." The MMPI showed somatic features, and the Rorschach test suggested some difficulty controlling emotions and some "deep disturbing" anxiety. The doctor opined that Plaintiff would have at least mild difficulty relating to fellow workers and supervisors, and would have significant difficulty withstanding the stress and pressure of a day-to-day job situation. Nevertheless, the doctor stated that Plaintiff understood and followed instructions adequately, and appeared to have "essentially no difficulty" maintaining attention to perform simple repetitive tasks. He diagnosed somatization disorder.
 
 
 11
 Dr. Driscoll completed a Medical Assessment of Ability to do Work-Related Activities Form. There, Dr. Driscoll opined that Plaintiff had good abilities to follow work rules, use judgment, function independently, maintain attention and concentration, understand, remember and carry out simple job instructions, and maintain his personal appearance. He believed that Plaintiff had fair abilities to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, understand, remember and carry out detailed, but not complex, job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. He opined that Plaintiff had poor to no ability to understand, remember and carry out complex job instructions.
 
 II
 
 12
 Dr. Peter Gwynne, a psychiatrist, testified as a medical advisor at Plaintiff's hearing, stating that Plaintiff did not have an impairment or combination of impairments that met or equalled a condition set forth in the Listing of Impairments.
 
 
 13
 Dr. Gwynne stated that Plaintiff had a somatoform disorder. He rated it as a two on a one-to-five scale, with five being the most severe. Dr. Gwynne opined that Plaintiff's abilities to understand, remember and carry out simple instructions, and to respond appropriately to supervisors in a work setting were unimpaired. He added that Plaintiff's abilities to respond appropriately to co-workers, deal with routine stress in the work place, make important decisions immediately, and concentrate on a sustained basis were only mildly impaired. Dr. Gwynne stated that he generally accepted Dr. Driscoll's psychological evaluation, except he disagreed with Dr. Driscoll's opinion that Plaintiff had "poor or no" ability to understand, remember and carry out complex job instructions because it was unsupported by his evaluation.
 
 
 14
 Dr. Bruce Walsh testified as the vocational expert (VE). He stated that, given Plaintiff's age, education, work experience, and the functional capacities set forth by Dr. Gwynne, Plaintiff could perform a significant number of jobs in the national economy. Plaintiff could perform between 3,000 and 3,500 unskilled sedentary jobs, and 20,000 to 22,000 light jobs in the regional economy, including positions as a janitor, industrial laundry worker, sorter, folder, packer, hanger, and labeller in the laundry industry.
 
 
 15
 The ALJ found Plaintiff's somatoform disorder was not severe enough to be a listed impairment, and that there were mild restrictions on Plaintiff's relating with co-workers. The ALJ found a mild to moderate restriction on tolerating work-related stresses. The ALJ found that Plaintiff was unable to return to his previous work. Since Plaintiff was a younger individual (49 years old), had a limited education, and no transferable work skills, the ALJ found that Plaintiff could do 46 percent of unskilled light jobs and 50 percent of the unskilled sedentary jobs existing in the regional economy.
 
 III
 
 16
 Plaintiff's argument for reversing the Secretary's determination was that the ALJ asked an improper hypothetical of the VE, which incorporated Dr. Gwynne's findings that Plaintiff could perform those items Dr. Driscoll rated as fair on a sustained basis. Plaintiff asserted it was improper because the record does not support Dr. Gwynne's assessment of Plaintiff's psychological residual functional capacity rather than Dr. Driscoll's, and the hypothetical assumed the ultimate conclusion that was to be drawn by the vocational expert. In other words, Plaintiff had two attacks on the last hypothetical. The first was that it assumed facts to which the VE was required to testify. The District Court rejected this argument because whether Plaintiff could do various work-related mental activities on a sustained basis is a matter of medical judgment.
 
 
 17
 Secondly, Plaintiff objects to Dr. Driscoll's rating of "fair" being interpreted to mean that Plaintiff could perform those tasks on a sustained basis. The District Court found that the Secretary was entitled to rely on Dr. Gwynne's testimony to the exclusion of Dr. Driscoll's report. The District Court found that Dr. Driscoll made no specific findings as to Plaintiff's ability to carry out various work-related functions that he rated as "fair." The District court found that the form Dr. Driscoll used did not ask whether those functions can be performed on a sustained basis or throughout an eight hour workday.
 
 
 18
 Plaintiff contests the District Court's determination that there was substantial support for the medical judgment of Dr. Gwynne that Plaintiff could perform those functions rated "fair" by Dr. Driscoll on a sustained basis.
 
 
 19
 Plaintiff submits that Dr. Driscoll's report should constitute substantial evidence. Plaintiff contends that the plain meaning of the words "seriously limited" and "significant difficulty" as employed in Dr. Driscoll's evaluation clearly demonstrates that the doctor is of the opinion that these work-related mental functions cannot be performed by Plaintiff in an adequate fashion and/or on a sustained basis. Since Dr. Gwynne's inaccurate opinion was incorporated into the last hypothetical to the VE, the answer to such a question cannot constitute substantial evidence of non-disability. Myers v. Weinberger, 514 F.2d 293, 294 (6th Cir.1975). Plaintiff concludes that the District Court erred in finding substantial evidence supported the Secretary's decision.
 
 IV
 
 20
 Non-examining physicians' opinions can be substantial evidence, see, e.g., Richardson v. Perales, 402 U.S. 389, 408 (1971), but their opinions are entitled to less weight than the reports of any other physicians who examined the claimant over a period of time. Sherrill v. Sec'y of HHS, 757 F.2d 803, 805 (6th Cir.1985).
 
 
 21
 The ALJ properly rejected Dr. Driscoll's opinion in favor of Dr. Gwynne's. In his rationale, the ALJ found that Dr. Driscoll had noted in his narrative report that there would be only a mild restriction of Plaintiff's ability to relate, and a significant problem in tolerating stress, yet, on the Medical Assessment Form, Dr. Driscoll characterized Plaintiff's abilities in both areas as fair. The ALJ found this to be a serious discrepancy that diminished the credibility of his report. Instead, the ALJ relied on Doctors Roth, Steiman, and Gwynne.
 
 
 22
 Dr. Roth performed an examination on August 26, 1986. He found that Plaintiff had a normal attention span, and his conversation was coherent and relevant. He also found his judgment to be appropriate. His IQ score "just barely" placed him in the low average range. She concluded that, while his ability to relate to others "may be somewhat impaired," he could follow directions and perform tasks adequately."
 
 
 23
 Dr. Steiman performed a neurological examination for HHS in March of 1987. Dr. Steiman opined that, based on his mental status, he would not expect Plaintiff's daily activities to be restricted. When Dr. Steiman examined Plaintiff a year later, he made the same findings.
 
 
 24
 Similarly, in the body of Dr. Driscoll's report, he found that Plaintiff's affect was appropriate, and he related well. Plaintiff's ability to concentrate was "quite good," and his judgment seemed adequate. Dr. Driscoll stated that the results of the Bender test suggested that Plaintiff's potential level of intellectual functioning was "significantly above the present findings" of dull-normal.
 
 
 25
 Moreover, Dr. Driscoll found that Plaintiff had good abilities to follow work rules, use judgment, function independently, maintain attention and concentration, understand, remember and carry out simple job instructions, and maintain his personal appearance. He believed that Plaintiff had fair abilities to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, understand, remember and carry out detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.
 
 
 26
 Based on the above findings, it is clear to this Court that there was substantial evidence to support the Secretary's decision, and the District Court is affirmed.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 A severe pain in the calf muscles occurring during walking, but which subsides with rest. It results from an inadequate blood supply that may be due to arterial spasm, atherosclerosis, arteriosclerosis, or an occlusion