25 F.3d 1048
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 William A. JOHNSTON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-1467.
 United States Court of Appeals, Sixth Circuit.
 May 19, 1994.
 
 Before: NELSON, SUHRHEINRICH, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant William A. Johnston appeals the district court's order affirming the Secretary of Health and Human Services' denial of social security disability benefits. Mr. Johnston asserts that there is not substantial evidence in the record to support the Secretary's determination. For the reasons that follow we conclude that the Secretary's denial of benefits is supported by substantial evidence, and therefore affirm the district court's order.
 
 I.
 A.
 
 2
 Mr. Johnston was born on September 8, 1932, and was fifty-eight years old at the time of the Secretary's final decision. He has a tenth grade education, and he has worked as a carpenter his entire life. Mr. Johnston was laid off as a carpenter in November 1987. Following the lay off, he received unemployment compensation until May 1988.
 
 
 3
 On August 9, 1988, Mr. Johnston filed an application for disability insurance benefits pursuant to Title II of the Social Security Act ("the Act"). 42 U.S.C. Secs. 416(i), 423(d). He alleged that he became disabled on May 2, 1988, as a result of osteoarthritis in his lower lumbar spine and his knees. The Secretary denied Mr. Johnston's application on October 4, 1988. Mr. Johnston requested reconsideration of this decision on November 30, 1988, and on January 11, 1989, the Secretary again denied benefits.
 
 
 4
 Mr. Johnston requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 18, 1989. At this hearing Mr. Johnston testified that he was disabled and unable to return to work because his back and leg pain prevented him from sitting, standing, or walking for prolonged periods. He estimated that he could only sit for twenty minutes, stand for ten minutes, and walk just a few blocks before his back pain intensified. On August 21, 1989, the ALJ determined that Mr. Johnston was not entitled to disability benefits. Mr. Johnston filed a Request for Review of this decision on September 22, 1989, and he submitted additional evidence in support of his claim. The Appeals Council denied Mr. Johnston's request and let the ALJ's decision stand as final.
 
 
 5
 Mr. Johnston then filed a complaint in the district court, and on August 15, 1990, a united states magistrate judge recommended that the case be remanded to determine Mr. Johnston's residual function capacity. On October 26, 1990, the district court adopted the magistrate's report and recommendation and remanded the case to the Secretary for further proceedings. On December 4, 1990, the Appeals Council vacated the final decision of the Secretary and remanded the case to an ALJ.
 
 
 6
 On April 2, 1991, a supplemental hearing was held in front of the ALJ. At this hearing, Mr. Johnston testified he still could not bend his back, climb stairs, or hold onto a hammer due to severe back pain. Sore knees and back pain allegedly prevented him from remaining on his feet for prolonged periods and he stated that it was hard for him to pick up objects weighing twenty pounds. While he went shopping and cut the grass, he claimed his household activities were limited to emptying the wastebaskets.
 
 
 7
 A medical advisor, Dr. Frank Cox, testified at the remand hearing that Mr. Johnston suffered from minor arthritis of the phalangeal joints of his fingers and crepitation (grinding noises) in both knees. Dr. Cox stated that there was no objective evidence to support a diagnosis of nerve root disease of the spinal column and he found both knees to be stable with full range of motion. Dr. Cox asserted that Mr. Johnston's impairments were not severe enough to meet or equal any of the Listing of Impairments.
 
 
 8
 A vocational expert, Mary Smith, also testified at the supplemental hearing and classified Mr. Johnston's past work as heavy, skilled activity that did not impart any transferable skills outside the carpentry field. Ms. Smith testified that there would be no jobs that Mr. Johnston could do if he were capable of only light or sedentary work, but that if he were capable of medium work activity, there were numerous jobs in the national economy that he could perform.
 
 
 9
 On May 22, 1991, the ALJ again decided that Mr. Johnston did not suffer from impairments severe enough to render him disabled because he could perform a significant number of jobs requiring medium work activity. On April 16, 1992, the Appeals Council declined jurisdiction of the case, and pursuant to 20 C.F.R. Sec. 404.984(b)(2) (1993), the ALJ's May 22, 1991, decision became final.
 
 
 10
 Mr. Johnston returned to federal district court, and the parties filed cross motions for summary judgment. On October 7, 1992, a united states magistrate judge concluded that the Secretary's decision was not supported by substantial evidence and recommended that Mr. Johnston's motion for summary judgment be granted. On January 27, 1993, the district court rejected the magistrate judge's report and recommendation, and granted the Secretary's motion for summary judgment.
 
 B.
 
 11
 Mr. Johnston was evaluated by several physicians during the course of his appeals. His history of medical treatments for his claimed disabilities dates back to February 1984, when he sought treatment for bilateral knee pain from an orthopedist, Dr. James Baril. Over the next four years, Mr. Johnston sought treatment from Dr. Baril on several occasions. Dr. Baril diagnosed Mr. Johnston as having degenerative arthritis of the knees, and opined that Mr. Johnston would be capable of lifting twenty-five pounds, but that he should not repeatedly bend or squat. Dr. Baril also diagnosed Mr. Johnston as having mild radiculopathy (a diseased condition of roots of spinal nerves). On October 24, 1989, Dr. Baril concluded that Mr. Johnston was permanently disabled.
 
 
 12
 Mr. Johnston was evaluated by Dr. Tanvir Qureshi in September of 1988 at the request of the Secretary. Dr. Qureshi noted that Mr. Johnston appeared to have osteoarthritis of the lumbar spine and knees, that there were immature cataracts in both of Mr. Johnston's eyes, and that Mr. Johnston became slightly short of breath upon exertion, and had difficulty bending forward at the waist. However, Dr. Qureshi did not give an opinion as to Mr. Johnston's residual function capacity.
 
 
 13
 A consultative examination was performed at the request of Mr. Johnston's attorney by Dr. Michael Riethmiller. Based on his evaluation, it was Dr. Riethmiller's opinion that Mr. Johnston was unable to return to his former duties as a carpenter due to degenerative arthritis of his knees and hands which would prevent him from climbing, squatting, kneeling, or forcefully gripping hand tools. Dr. Riethmiller also opined that Mr. Johnston would be unable to perform work activities requiring him to climb or to work while in kneeling or squatting positions; and, due to the arthritis in his lumbar spine, hands, and both knees he shouldn't have to lift or carry more than 20 pounds at a time.
 
 
 14
 The Secretary found that Mr. Johnston was impaired as a result of osteoarthritis of the lumbar spine, degenerative arthritis in both knees, right hand and right foot, and immature cataracts affecting both eyes, but that these conditions were not severe enough to either meet or equal the Listing of Impairments, or prevent him from performing a limited range of medium work. Noting that Mr. Johnston's impairments prevented him from performing jobs requiring a great deal of stair or ladder climbing, the Secretary found that there were still a significant number of jobs existing in the national economy that he could perform, such as production assembler, dining room attendant, hospital food service worker, and self-service laundry attendant.
 
 II.
 
 15
 It is Mr. Johnson's primary contention on appeal that the district court erred in affirming the ALJ's denial of benefits because the ALJ improperly rejected the evidence and opinions submitted by Dr. Baril and Dr. Riethmiller, and concluded that there was substantial evidence in the record supporting the Secretary's decision to deny benefits. Mr. Johnston also asserts that the ALJ gave too much weight to the opinion of the non-examining medical advisor, Dr. Frank Cox.
 
 
 16
 This Court's review of the Secretary's decision is limited to an inquiry whether the Secretary's findings are supported by substantial evidence. McCormick v. Secretary of Health & Human Services, 861 F.2d 998, 1001 (6th Cir.1988). "[S]ubstantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir.1993). Furthermore, it is the Secretary, rather than the court, who "is charged with the duty to weigh the evidence [and] to resolve material conflicts in the testimony." Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir.1990).
 
 
 17
 The ALJ specifically rejected Dr. Baril's finding concerning Mr. Johnston's disability as unsupported by substantial evidence in the form of objective medical and clinical findings. See 20 C.F.R. Sec. 404.1527 (1993).
 
 
 18
 Mr. Johnston correctly points out that this Court gives "[t]he medical opinions and diagnoses of treating physicians ... substantial deference, and if the opinions are uncontradicted, complete deference." Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). However, Mr. Johnston fails to draw our attention to the immediately following sentence, which states that complete deference is only given "if the treating physician's opinion is based on sufficient medical evidence." Id. While we reaffirm the principle that great deference is to be given to the opinion of a treating physician, this Court has made it clear that where there is good reason to doubt the accuracy of a treating physician's diagnosis, "the Secretary [is] not bound by the opinions of the treating physician[ ]...." Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir.1987); accord Hall v. Bowen, 837 F.2d 272, 276 (6th Cir.1988) ("the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them"). This conclusion is also borne out by the regulations themselves.
 
 
 19
 The ALJ is required to review medical evidence pursuant to the dictates of 20 C.F.R. Sec. 404.1527 (1993). The regulation mandates that the ALJ weigh all the evidence when physician testimony is inconsistent: "If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have." 20 C.F.R. Sec. 404.1527(c)(2) (1993).
 
 
 20
 In addition, the regulations provide that an ALJ may refuse to give controlling weight to a treating physician's opinion if that opinion is (1) unsupported by medically acceptable clinical and laboratory diagnostic techniques; or (2) inconsistent with the other substantial evidence in the case record. 20 C.F.R. Sec. 404.1527(d)(2) (1993). Furthermore, the ALJ should "look at the treatment the source has provided and at the kinds and extent of examinations and testing...." 20 C.F.R. Sec. 404.1527(d)(2)(ii) (1993). Finally, the ALJ may give less weight to a medical opinion that is unsupported by medical signs and laboratory findings. 20 C.F.R. Sec. 404.1527(d)(3) (1993).
 
 
 21
 On April 18, 1988, Mr. Johnston's treating physician, Dr. Baril, noted, "[h]e [Mr. Johnston] is going to be applying for disability--I don't think he will get it, but he may try." Despite his apparent skepticism about Mr. Johnston's disability, on October 24, 1989, the doctor submitted a form stating that Mr. Johnston was permanently disabled. Dr. Baril also made medical findings that contradict his opinion that Mr. Johnston was permanently disabled. He noted that as of October 8, 1988, although Mr. Johnston suffered from arthritis in both knees, he was able to walk on his heels and toes, squat, and climb stairs. Moreover, Dr. Baril noted that as of January 8, 1991, Mr. Johnston's knees were stable, and an examination of his back showed normal straight leg raising and intact reflexes. Dr. Baril also diagnosed Mr. Johnston as suffering from mild radiculopathy, but electromyogram and nerve conduction studies were all normal, showing no electro-diagnostic evidence of radiculopathy. Also, the only medication he prescribed for Mr. Johnston for his supposed permanent disability was aspirin. Finally, the ALJ noted that Mr. Johnston himself testified that his daily activities include going out for shopping and taking the mail, doing some household tasks and repairs, gardening, cutting the grass, and visiting friends.
 
 
 22
 The ALJ took all of these factors into account, and due to the internal inconsistencies in Dr. Baril's opinions, and the lack of objective medical results to support his findings, the ALJ properly rejected Dr. Baril's opinion that Mr. Johnston is permanently disabled.
 
 
 23
 Similarly, the ALJ found that the opinion of Dr. Riethmiller was unsupported by objective findings and rejected it. Dr. Riethmiller examined Mr. Johnston and opined that he should not lift more than twenty pounds at a time. The ALJ rejected Dr. Riethmiller's findings because,
 
 
 24
 Dr. Riethmiller's report is more noteworthy for the lack of objective abnormalities than for the presence of them. Specifically, he reports that [Mr. Johnston] maintains 90 degrees of straight leg raising bilaterally before back pain is encountered; this is essentially within normal limits. Dr. Riethmiller does report [Mr. Johnston] to have limitation of motion of the spine, but he reports no evidence of asymmetric reflexes, sensory deficit, motor weakness, atrophy, effusion, joint instability or muscle spasm. Furthermore, while x-rays accompanying this report do show degenerative changes with joint compartment space narrowing of the right knee, clinical examination of the knees shows complete range of motion with some crepitus but with no effusion or instability. Thus, Dr. Riethmiller's opinion concerning [Mr. Johnston's] functional capacity is out of proportion to his objective findings, and accordingly is rejected under authority of Regulation 404.1527.
 
 
 25
 Under the authority discussed above, the ALJ properly rejected the opinion of Dr. Riethmiller.
 
 
 26
 Dr. Tanvir Qureshi, a consulting physician, also examined Mr. Johnston on September 7, 1988. His findings support the ALJ's decision to reject opinions that Mr. Johnston could lift no more than 25 pounds. His findings included: (1) no evidence of joint swelling or deformity; (2) movement of all joints except the knees were normal except for some limitation of forward flexions; (3) knee examination revealed no significant limitation of activity; (4) heel to toe walking was normal; (5) Mr. Johnston could sit on the floor and stand up with only minimal discomfort; (6) neurological exam was normal; and (7) pulmonary functions were basically within normal range. While it is troublesome that Dr. Qureshi did not offer an opinion as to Mr. Johnston's residual function capacity, his objective medical findings nonetheless support the ALJ's rejection of Dr. Baril's and Dr. Riethmiller's determination of Mr. Johnston's residual function capacity. See Hall v. Bowen, 837 F.2d F.2d 272, 276 (6th Cir.1988) (consulting examiner's opinion accepted over treating physician's opinion where both doctors made similar findings, but the treating physician rendered an opinion that was inconsistent with the record without justification).
 
 
 27
 The final relevant medical opinion offered in this case is that of Dr. Frank Cox, who testified as a medical advisor. Based on a review of the record, he opined that Mr. Johnston could perform medium work with some limitations on ladder and stair climbing. Dr. Cox also noted that clinical examination findings revealed that Mr. Johnston had almost full range of back and knee motion, that there were no objective studies to show radiculopathy, and that Mr. Johnston's back and knee arthritis is consistent with someone his age.
 
 
 28
 Mr. Johnston challenges any use of Dr. Cox's testimony because Dr. Cox testified that he is an internist and that normally someone with Mr. Johnston's impairments would be treated by an orthopedic specialist or rheumatologist. Mr. Johnston cites two cases, Collins v. Richardson, 334 F.Supp. 1333 (D.S.C.1971), and Sherrill v. Secretary of Health and Human Services, 757 F.2d 803 (6th Cir.1985), in support of his contention that Dr. Cox's testimony should be given less weight. Neither of these cases, however, is persuasive. In Collins, the court "question[ed] the wisdom" of having a psychiatrist interpret the medical reports submitted by internists and neurologists. 334 F.Supp. at 1336. In Sherrill the reverse situation was presented--a physician who specialized in internal medicine testified about psychiatric evidence. Neither of these cases is apposite to the facts at hand. Dr. Cox's practice as an internist includes the treatment of patients with joint and musculoskeletal problems. Thus, this is not a case where "one specialist [is] interpret[ing] the findings of another specialist in a nonrelated area." Collins, 334 F.Supp. at 1336.
 
 
 29
 The ALJ accepted Dr. Cox's testimony that Mr. Johnston's impairments, "considered singly and in combination, do not meet or equal the requirements of the Listing of Impairments...." Further, the ALJ accepted Dr. Cox's conclusion that Mr. Johnston could perform medium work, 20 C.F.R. Sec. 404.1567, with limitations with respect to stair or ladder climbing. 20 C.F.R. Sec. 505.1545. Despite the fact that Dr. Cox never actually examined Mr. Johnston, his affirmative testimony constitutes substantial evidence to support the ALJ because "his opinion was based on the objective evidence of medical reports made by the claimant's treating physicians and testimony given by [Mr. Johnston] himself." Atterberry v. Secretary of Health and Human Services, 871 F.2d 567, 570 (6th Cir.1989).
 
 
 30
 Based on all the medical reports and testimony at the two hearings, we find that there is substantial evidence in the record to support the ALJ's decision that Mr. Johnston had the residual function capacity to perform medium work with limitations on ladder and stair climbing. Consequently, based on the vocational expert's testimony regarding the numbers of jobs in the economy that Mr. Johnston could perform, the ALJ justifiably concluded that Mr. Johnston was not disabled. Since we find that the ALJ's decision was supported by substantial evidence, we need not address Mr. Johnston's arguments that the Secretary failed to carry her burden of establishing jobs that Mr. Johnston can perform.
 
 
 31
 Finally, the Secretary argues that Mr. Johnston incorrectly states the burden of the Secretary in relation to determination of residual function capacity. The basis for the Secretary's argument is Mr. Johnston's statement that the "Secretary found that Mr. Johnston does not have the capacity to perform his past relevant work as a carpenter.... Having so found, the burden shifts to the Secretary to establish that there are a significant number of jobs that Mr. Johnston can perform...." But it is clear from Mr. Johnston's reaction in his reply brief that the Secretary's response is to an argument he is not making: "[T]he issue of who bears the burden of establishing residual functional capacity is irrelevant and only serves to cloud the true issue of whether the Secretary's decision that Mr. Johnston can perform medium-level work is supported by substantial evidence." While the Secretary may desire a definitive statement[1] on who bears the burden of proving a claimant's residual function capacity, this issue is not properly before us and this case is not the proper vehicle for such a determination.
 
 III.
 
 32
 For the foregoing reasons, this Court holds that there is substantial evidence to support the ALJ's and district court's determinations that Mr. Johnston retained the residual function capacity to perform medium work with limitations on ladder and stair climbing; therefore, the denial of benefits is AFFIRMED.
 
 
 
 [1]
 We take note of the fact that there is case law in this circuit that obfuscates the issue of who bears the burden of proving the claimant's residual function capacity. See Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir.1990) ("The Secretary bears the burden of demonstrating that, notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy"); but see Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir.1990) ("The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job")