Dorothy NEWKIRK, Plaintiff,

v.

Louis SULLIVAN, Secretary of Health and Human Services, Defendant.

No. 91–CV–75829–DT.

United States District Court,
E.D. Michigan, N.D.

Jan. 19, 1993.

Jeffrey G. Nutt, Candace Crowley, County of Wayne Neighborhood Legal Services, Detroit, MI, for plaintiff.

Elizabeth J. Larin, E.D. Michigan, Detroit, MI, for defendant.

## ORDER ACCEPTING REPORT AND RECOMMENDATION

HACKETT, District Judge.

The Court has reviewed the file and the Magistrate Judge's Report and Recommendation submitted herein and any timely objections filed thereto. The proposed Report and Recommendation is hereby accepted and entered as the findings and conclusions of the Court;

**295**

Now, therefore, IT IS ORDERED that Defendant's Motion for Summary Judgment is hereby DENIED, the Motion for Summary Judgment of Plaintiff is hereby GRANTED and the case remanded to the Secretary for computation of benefits.

LET JUDGMENT BE ENTERED ACCORDINGLY.

STEVEN D. PEPE, United States Magistrate Judge.

## REPORT AND RECOMMENDATION

Plaintiff Dorothy Newkirk has brought this action under 42 U.S.C. § 405(g) to challenge a final decision of defendant Secretary denying her application for Supplemental Security Income (SSI) Benefits. Both parties have filed summary judgment motions, which have been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff applied for SSI benefits on February 2, 1990, claiming disability as of May 1, 1975, due to "seizures, liver, kidney, nerves" (R. 68–71). Her application was denied initially (R. 72–77) and on reconsideration (R. 78–85). On September 20, 1990 and December 12, 1990, administrative hearings were conducted by Administrative Law Judge Jesse Butler ("ALJ"). The first hearing was adjourned, apparently because the plaintiff was unrepresented and was unable to understand all the medical information filed in her case (R. 29–32). At the second hearing, however, plaintiff testified accompanied by a paralegal, Yvonne Johnson Taylor (R. 33). Dr. Lois Brooks, a vocational expert ("VE"), also testified (R. 33). On February 25, 1991, Judge Butler issued his decision finding plaintiff not disabled (R. 7–17). The Appeals Council upheld this decision on September 9, 1991 (R. 3–4).

BACKGROUND

Plaintiff was born in June 9, 1943 and was 47 years old at the time of the ALJ's decision (R. 37). She has not completed high school, although the record is unclear as to which grade she did complete. At one point, plaintiff indicated she finished the ninth grade (R. 90), while at other times

she states she finished the eleventh (R. 38–39, 128).

Plaintiff moved to Detroit in 1975 (R. 39) and worked for a few years, first as a bartender (R. 41) and then as a second cook (R. 40). She last worked in 1978 or 1979 (R. 44). She evidently left her job due to extreme weakness and dizziness (R. 44). Plaintiff received ADC payments until her son turned 18, and then she was switched to general assistance (R. 45).

### Administrative Law Judge's Decision

The ALJ found that plaintiff had not engaged in any substantial gainful activity since February 1990, and that she suffers from the impairments of a schizoaffective disorder, severe osteoarthritis, and alcoholism (R. 12). Judge Butler also concluded that these impairments, singly or in combination, do not meet or exceed any on the Listing of Impairments (R. 12). These impairments do, however, make it impossible for claimant to perform her past relevant work (R. 13). Despite the fact that plaintiff does not have any transferable work skills, the ALJ did feel she retained the residual capacity to do a limited range of sedentary work, involving simple, repetitive tasks (R. 13). The ALJ rejected plaintiff's testimony regarding the extent of her pain as not fully credible (R. 13). Using the Medical Vocational Guidelines, and the testimony of a vocational expert, Judge Butler found that plaintiff could perform a significant number of jobs which exist in the national economy (R. 13). Consequently, he ruled that plaintiff was not disabled under the Social Security Act (R. 13).

I asked plaintiff's counsel to state with specificity those areas of the ALJ's opinion that were incomplete, inaccurate, or mischaracterized the evidence. A copy of the Administrative Law Judge's findings of fact, as supplemented by the comments of plaintiff's counsel, is included in plaintiff's motion for summary judgment. The Administrative Law Judge's Report with counsel's annotations, as well as the statement of facts in support of the Secretary's motion for summary judgment, provide an adequate summary of the facts and plaintiff's medical history for purposes of this review.

### ANALYSIS

#### Standard of Review

■ In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Sherrill v. Secretary of HHS*, 757 F.2d 803, 804 (6th Cir.1985). Substantial evidence has been defined as "[m]ore than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Furthermore, the Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). The substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts. *Id.* If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm. *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983); *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir.1987).

■ In this case, the issue is whether there is substantial evidence to support the ALJ's finding that plaintiff retains the residual function capacity to perform a limited range of sedentary work. Plaintiff's attorney advances several arguments as to why the ALJ's decision is not supported by substantial evidence and should be overturned:

1) The ALJ's statement of the medical evidence is incomplete and misleading;

2) The ALJ should have considered plaintiff's chronic alcoholism as a separate

basis for a determination of disability; and

3) Plaintiff suffers from non-exertional impairments, and thus it was erroneous for the ALJ to rely on the grid in making his disability determinations.

I agree that the ALJ's decision that plaintiff can do simple, repetitive work is not supported by substantial evidence. Consequently, plaintiff's motion for summary judgment should be granted.

■■■ Plaintiff is correct that application of the grid to direct a finding is improper when the claimant is incapable of performing a full range of work at a given exertional level. *See, e.g., Cole v. Secretary of HHS*, 820 F.2d 768, 772 (6th Cir. 1987); *Gibson v. Heckler*, 762 F.2d 1516, 1521 n. 7 (11th Cir.1985) (where claimant could neither sit nor stand for more than four hours in an eight hour day, the grids would be "grossly overinclusive" with respect to claimant's residual functional capacity and hence use of the grids even as a "frame of reference" would be inappropriate); *Wages v. Secretary*, 755 F.2d 495, 498–99 (6th Cir.1985); *Kirk v. Secretary of HHS*, 667 F.2d 524, 528–29 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In the present case, however, the ALJ acknowledged that plaintiffs' nonexertional limitations preclude her from performing a full range of sedentary work (Finding 11, R. 13), and he uses the grid in Finding 10 only as a framework for decision-making (R. 13). The ALJ took testimony from a VE,[1] and he used that testimony as the basis for his finding that plaintiff is not disabled (R. 13).

If the Secretary seeks to rely on VE testimony to carry his burden of proving the existence of a substantial number of jobs that plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes plaintiff in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the question must accurately describe the claimant.[2] A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the plaintiff can perform.

■■ In this case, the ALJ found that plaintiff could not return to her past relevant work. Thus, the burden of proof has shifted to the Secretary to demonstrate that there are other jobs in the national economy which plaintiff can perform.[3] The primary issue for review, then, is whether the ALJ's hypothetical question to the VE accurately described the plaintiff, so that the VE's response constitutes substantial evidence to uphold the ALJ's decision.

In the present case, the ALJ's hypothetical question to the VE was broken into several parts as follows:

ALJ: Let's assume that I found that Mrs.—Miss Newkirk could walk a half a block that she says she can do before she has to stop and catch her breath for a five or 10–minute period, she can stand for 15 to 20 minutes and could sit for approximately 30 minutes as she indicated, and while we were not able to get some poundage in terms of weight it would appear from the bucket—the five-

---

1. When the grid cannot be used, the Secretary should call a vocational expert to identify jobs the claimant is capable of performing. *See, e.g., Gonzalez v. Secretary of HHS*, 784 F.2d 1417, 1419–20 (9th Cir.1986); *McLain v. Schweiker*, 715 F.2d 866, 869–70 n. 1 (4th Cir.1983); *Carter v. Heckler*, 712 F.2d 137, 142 (5th Cir.1983); *O'Banner v. Secretary of HEW*, 587 F.2d 321, 323 (6th Cir.1978).

2. *See, e.g., Cole v. Secretary of HHS*, 820 F.2d 768, 775–76 (6th Cir.1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Varley v.*

*Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's "individual physical and mental impairments"); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir.1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir.1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

3. The shifted burden of proof applies to Supplemental Security Income cases as well as to disability insurance benefits cases.

gallon container that she talked about being approximately half full, would fall within the light category of 10 to 20 pounds, and if I made this a finding on the basis of the evidence in this case would that permit her former work?

VE: No.

ALJ: Would there be any other unskilled jobs of the low stress variety that you can identify, and if so, what and in what numbers do they exist if at all in this general geographic region?

VE: Within that hypothetical would have to put her at a sedentary level job, exertional level, and approximately 12,000 of the various industrial assembly, sorting, packaging [sic].

ALJ: If I found that Mrs.—Miss Newkirk experiences the give-away weakness in the right leg as described here today so that certainly we would have to have her to avoid unprotected heights, climbing and being around dangerous or moving machinery, with that problem would that affect the jobs or the numbers?

VE: I would say within that could only do the sedentary jobs [sic].

(R. 62–63). The VE then went on to testify that if any of plaintiff's three major complaints—drowsiness, dropping things, and depression—were true, plaintiff would be disabled from any work (R. 63–65).

While these hypothetical questions, with the exception of the three factors just listed, do account for plaintiff's physical limitations, they do not adequately account for plaintiff's mental impairments. The only reference made by the ALJ to these mental impairments during his questioning of the VE occurred early in that questioning:

ALJ: There is an indication in the record here that there is the absence of a significant exertional impairment but there is an emotional problem that prevents Mrs.—Miss Newkirk from doing things other than simple repetitive type tasks and they should be of a limited or low stress variety and if that were my finding on the basis of the evidence in this case, would she be able to do her former work?

(R. 62). For reasons stated below, the ALJ did not adequately account for plaintiff's mental condition in reaching his conclusion that she could do simple, repetitive tasks.

In his written opinions, the ALJ addresses the plaintiff's mental condition in two primary paragraphs. In those paragraphs, he states:

The record as a whole fails to support the extent of severe pain and other functional limitations, including a nervous or emotional condition, which would preclude her from performing at least work at the sedentary level. Consequently, in light of the vocational testimony, the claimant cannot be found to be disabled through the date of this decision.

. . . . .

The claimant was examined by a psychiatrist on behalf of the Administration in March, 1990 (Exhibit 10). The psychiatrist, Jean Alce, M.D., reported that the claimant complained of bad nerves as she expressed at the hearing but with findings showing depression as opposed to anxiety or the like. The claimant did have some anxiety. Dr. Alce indicated that the claimant again denied that she does not drink alcohol [sic]. The claimant was also reported to spend her day reading the bible, taking her medications, she cooks for herself, attends church every Sunday and socializes with her son. The claimant also was reported to enjoy fishing and gardening, although not involved in those activities at the time of the examination (as the examination was in early March, 1990, with the weather not conducive to these activities). Memory was reported to be slightly impaired with a small fund of information. The diagnosis was for a schizo-affective disorder.

(R. 10). Attached to the ALJ's decision is an OHA Psychiatric Review Technique Form, which was signed by the ALJ. According to this form, plaintiff often experiences "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)", and one or twice had "episodes of deterioration or decom-

pensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)" (R. 17). In both of these categories, if plaintiff was evaluated at one level higher, *i.e.*, "frequent" for the first category or "repeated (3+)" for the second category, plaintiff would have satisfied the Listing of Impairments, which would render her automatically disabled (R. 17). Plaintiff received these same ratings at two other points in the review process. The first was on March 19, 1990 (R. 140) and the second was on June 15, 1990 (R. 163).

Plaintiff has objected to the ALJ's characterization of Dr. Alce's report on several grounds, two of which are of primary importance. First, plaintiff asserts that she "suffers from more than merely 'some' anxiety. Dr. Alce found that Claimant felt hopeless, depressed, clearly sad, and obviously anxious from the beginning to the end of the interview." Pl. Brief in Support, p. 7 n. P–4. A review of Dr. Alce's report shows that plaintiff is correct in claiming the ALJ mischaracterized the report. On the first page of the report, Dr. Alce stated that

> Ms. Newkirk has not complained about any depression, even though she referred to experiencing "bad nerves". However, she appears to be depressed. Her communication skills seem to be good, however, because of her depressed status, she could not come out and evolve appropriately in the interview. She remained anxious from the beginning to the end of the interview. She would sit somewhat motionless in the chair and at no point was able to relax and lean to get support from the chair.

(R. 128). These conclusions continued throughout the report:

> She presented herself with low self esteem, though she claims to feel good about herself, but apparently in the way she spoke about herself, she feels hopeless and does not think she will ever feel better and be able to return to the work force (R. 130).

> In summary, Ms. Newkirk appeared to be depressed, very much preoccupied with her physical health. Her affect was flat, constricted and her mood definitely sad (R. 130).

> At the present time, she is depressed, appears clearly sad. Her affect is flat as well as constricted (R. 131).

> The prognosis for Ms. Newkirk appears to be guarded. She has been in treatment over the years and apparently she has not improved significantly to be able to resume her daily activities (R. 132).

While the ALJ's decision does reflect some of these conclusions, it appears to discount the severity of plaintiff's mental disorder without clearly stating why.

In addition to the ALJ's characterization of Dr. Alce's report, plaintiff has also objected to the ALJ's asserted reasons as to why plaintiff does not currently engage in fishing and gardening. According to the ALJ, the Michigan winter weather prevalent in March restricted plaintiff's leisure pursuits. Nowhere in the record, however, does anyone mention the weather in connection with these pursuits. The plaintiff said nothing about it at the hearing, and Dr. Alce's report simply says:

> Ms. Newkirk claims to like fishing and gardening. However, she is not involved in any of those activities at the present time.

(R. 129). As the plaintiff argues, "[t]he record is silent as to whether Ms. Newkirk is still capable of performing these activities. The weather is clearly not said to be a factor." Pl. Brief in Support, p. 8 n. P–7. While the ALJ can interpret ambiguities in the record, such as Dr. Alce's "fishing and gardening" statement, it is unfortunate that if this was a relevant consideration to the ALJ, he did not ask plaintiff about these activities at her December 12, 1990, hearing.

Dr. Alce's findings regarding plaintiff's mental state and memory problems are in accord with the April 4, 1989, discharge summary from the Michigan Health Center, where plaintiff was admitted for alcohol problems. In that report, Dr. Sonnora Reed, D.O., stated:

Patient remained very confused and it was discussed that patient may need extended care facility, however, the patient's son was very reluctant to do this and wanted to have the patient home.

She gradually became more alert, less confused and calm, however, still had some of the effects of her alcoholic encephalopathy which are felt to be quite chronic in nature, and patient will certainly continue to demonstrate gradual decline in her health.

She was subsequently discharged from the hospital in stable condition; however, again her overall prognosis is felt to be quite poor.

(R. 107). In fact, none of the medical reports indicate any improvement in plaintiff's mental condition. The ALJ has not pointed to any evidence which contradicts these reports.

The plaintiff also challenges the ALJ's finding that her testimony regarding her drowsiness was not credible. At her hearing, plaintiff testified that her Librium made her sleepy and her Wygesic caused her to fall asleep (R. 49 & 47). The ALJ's primary reason for discounting this testimony seems to be that plaintiff never reported the drowsiness to a physician. Yet, as the ALJ notes, plaintiff did tell Dr. Alce about the drowsiness. Also, a week after her application for SSI, plaintiff reported to the Michigan Disability Determination Service on February 9, 1990, that she sleeps two to three hours during the day (R. 101). The ALJ failed to note that, according to the 1992 *Physician's Desk Reference*, two of plaintiff's medications (R. 147, 179–80, 189) may each cause drowsiness (Librium, p. 1931, and Wygesic, p. 2542). The ALJ did not question plaintiff about whether she complained of drowsiness to any of her medical doctors, nor did the ALJ request any of plaintiff's treating physicians to comment on whether such complaints were made. Given the prior consistent statements of plaintiff on her drowsiness and the *PDR* notations of side effects of Librium and Wygesic, the ALJ's asserted reasons for rejecting plaintiff's testimony, without more, are not sufficient to totally

reject this drowsiness problem in the hypothetical question to the VE.

Thus, the record does not contain substantial evidence to support the ALJ's decision to discount the severity of plaintiff's mental problems and drowsiness. The VE testified that either of these conditions could preclude plaintiff from working. When the evidence concerning plaintiff's mental impairments are combined with the Social Security Administrations's psychiatric review results, I conclude that the ALJ's determination that plaintiff can do simple, repetitive work is not supported by substantial evidence. Consequently, the Secretary has failed to sustain his burden of proof and the ALJ's decision should be reversed.

▪ The remaining issue is whether the case should be remanded for further proceedings or whether benefits should be awarded. 42 U.S.C. § 405(g) provides for two types of remands. Sentence four of that section permits "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing," and sentence six allows a remand before an adjudication on the merits. A case can be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of additional evidence only upon a showing that the evidence is new and material, and that good cause exists for having failed to include the evidence in the prior administrative record. The Sixth Circuit has been strict in applying these requirements. *See, e.g., Oliver v. Secretary,* 804 F.2d 964 (6th Cir.1986); *Willis v. Secretary,* 727 F.2d 551 (6th Cir. 1984).

Prior to the 1980 amendments, remand was permitted on any showing of good cause. In 1980, Congress limited the sentence six remands by requiring a specific showing that the remand was for "new" and "material" evidence and a specific showing of "good cause for the failure to incorporate such evidence into the record in a prior proceeding". It was anticipated that many of these remands would be made prior to the district court's adjudication on the merits and entry of judgment. The

language of the amendment clearly applies to remands initiated by the Secretary or the court, and case law has applied similar restrictions to plaintiffs' requests for remands. *Melkonyan v. Sullivan,* — U.S. —, —, 111 S.Ct. 2157, 2164, 115 L.Ed.2d 78 (1991).

■ The Supreme Court in *Melkonyan* noted that when Congress limited sentence six remands, Congress did not limit the district courts' general post-adjudication power under sentence four to enter a judgment with or without remanding for a rehearing. — U.S. at — - —, 111 S.Ct. at 2164–65. Yet, the policy considerations behind Congress' actions in amending sentence six can help guide the exercise of the district court's post-adjudication discretion under sentence four. Through its amendments, Congress sought to limit remands requested by either side merely to supplement the record with new evidence and to correct errors that could have been avoided in the first instance. The Supreme Court noted that Congress, in imposing the requirement that the party seeking new evidence show why it was not gathered and presented before, sought "to speed up the judicial process so that these cases would not just go on and on and on." — U.S. at —, 111 S.Ct. at 2164 (quoting Congressman Pickle, 125 Cong.Rec. 23383 (1979)). Encouraging the parties to prepare their cases adequately at the administrative level will reduce erroneous decisions and time-consuming appeals and remands. Plaintiffs who make such errors have to reapply for benefits starting from the date of the new application. The Secretary, when making such errors, can seek to terminate future benefits under 42 U.S.C. § 423(f).[4]

■ Thus, in cases such as the present one, although this Court has the power to do so, it should decline to exercise its post-adjudication discretion to remand for the

purpose of allowing the Secretary to obtain additional evidence unless the Secretary can demonstrate good cause for why such evidence was not presented before. *See Carroll v. Secretary of HHS,* 705 F.2d 638, 644 (2d Cir.1983). A remand to allow the Secretary to try again to develope substantial evidence to rebut plaintiff's prima facie case without such a showing would be contrary to the congressional policy of encouraging greater care at the administrative level and preventing these cases from going "on and on and on." — U.S. at —, 111 S.Ct. at 2164 (quoting Congressman Pickle, 125 Cong.Rec. 23383 (1979)). A remand in the present case is different from a sentence four remand that the Supreme Court suggested would be appropriate, such as a remand to accord the plaintiff a full and fair hearing, or to make explicit findings essential to federal court review, or to make findings under a correct interpretation of the law or regulations. — U.S. at — - —, 111 S.Ct. at 2164–65 (quoting from House Report No. 96–100, at 13).

From the Secretary's briefs in other cases, I am aware that the Sixth Circuit in *Buck v. Secretary,* 923 F.2d 1200, 1205 (6th Cir.1991), noted that a remand for taking VE testimony is a sentence four rather than a sentence six remand. Yet, this descriptive statement in *Buck* should not be read as a ruling that a district court should always exercise its discretion to allow the Secretary a remand to correct the evidentiary mistakes of his ALJ's. The issue in *Buck* was not how a district court should exercise its discretionary authority to remand. Rather, *Buck* was concerned with the time frame in which a district court retains jurisdiction to hear a petition for attorneys' fees under the Equal Access to Justice Act. The lower court in *Buck* completed an adjudication on the merits in up-

---

4. Even in the absence of showing medical improvement, 42 U.S.C. § 423(f) permits a termination of benefits if there is a showing that plaintiff's physical or mental impairments are not disabling, and that finding is supported by "substantial evidence (which may be evidence on the record at the time any prior determination of entitlement based on disability was made, or newly obtained evidence which relates to that determination) which demonstrates that

a prior determination was in error." Thus, if the Secretary can demonstrate through supplemental VE testimony that there are jobs that plaintiff can perform notwithstanding her mental and physical impairments, this may show that an earlier determination of disability that resulted in the district court because of a deficient administrative record and a shifted burden of proof was "in error".

holding the Secretary's residual functional capacity determination but remanded to obtain VE testimony on potential jobs a person with such a residual functional capacity could perform. 923 F.2d at 1202. It is not clear from the Sixth Circuit's opinion whether the Secretary took any VE testimony in the earlier administrative proceedings. The Sixth Circuit statement concerning the remand is merely a factual description that the lower court remanded the case under sentence four of § 405(g). Again, the Sixth Circuit did not evaluate the wisdom of that exercise of discretion. Consequently, the language in *Buck* on remands for vocational testimony, 923 F.2d at 1205, is *dicta*, not the actual holding of the case. Thus, this language is not binding on this Court.

While this Court is not bound by the language in *Buck*, the question remains whether this Court should exercise its discretion in the same manner as the district court in *Buck*. I am not persuaded that we should look to *Buck* for guidance for several reasons. In the *Buck* opinion, the Sixth Circuit did not discuss the policy considerations behind Congress' actions, which I discussed above. It is clear these were not briefed, argued, or considered. In addition, the *Buck* opinion seems to have an overly narrow view of sentence six remands, and it apparently misread the statute. In the text of *Buck*, the court implies that a sentence six remand can only occur on the motion of the Secretary, while the statute actually states that a court can at any time exercise its own judgment to order a remand, *in addition* to doing so after a motion by the Secretary.[5] Finally, *Buck* is further diminished as a persuasive guidepost since the Supreme Court in *Melkonyan* rejected the reasoning of *Buck* on its primary holding and reversed the Ninth Circuit case upon which *Buck* relied. *See Fergason v. Sullivan*, 771 F.Supp. 1008, 1010 (W.D.Mo.1991) (noting that the holding in *Buck* was abrogated by *Melkonyan*).

For reasons state above, I believe that while our sentence four discretion under 42 U.S.C. § 405(g) is not limited by the 1980 amendments to sentence six of this subsection, I believe this Court's exercise of its discretion under sentence four should be informed and guided by the policy considerations of Congress in its amending sentence six of § 405(g). Here, the remand would be to allow the Secretary to ask the VE additional hypothetical questions factoring in various predicates regarding plaintiff's mental impairments and the drowsiness side effects of her medication. These were facts in the record at the December 1990 hearing. Accordingly, they are not *new* facts. Furthermore, the case law requirements on vocational expert hypothetical questions were clearly established in December of 1990. Thus, these questions could have been, and should have been, asked at that earlier time. Had the Secretary moved for a remand under sentence six of § 405(g), this Court under Sixth Circuit cases would have had to deny the request. I do not believe there is any good cause to allow such a remand under sentence four of § 405(g). Consequently, the decision of the Secretary should be reversed, and the case remanded for a determination and award of benefits.

RECOMMENDATION

For the reasons stated above, it is recommended that plaintiff's motion for summary judgment be granted, and that defendant's motion for summary judgment be denied. It is further recommended that the case be remanded for an award of benefits.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.Mich.LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981), *Thom-*

---

5. Sentence six of 42 U.S.C. § 405(g) reads:
   The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and *it may at any time order additional evidence to be taken* before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

*as v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987), *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D.Mich.LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) Pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.