**Susan Lynn RAJT, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,
Defendant.**

**Civ. A. No. 93–73511.**

United States District Court,
E.D. Michigan,
Southern Division.

July 25, 1994.

---

276

Gerald Benjamin, Levine & Benjamin, Southfield, MI, for plaintiff.

Saul S. Green, U.S. Atty., Detroit, MI, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On August 20, 1993, plaintiff filed the instant action seeking review of a January 4, 1993 decision of an administrative law judge ("ALJ"), denying plaintiff's application for disability benefits under the Social Security Act.[1] Pursuant to 28 U.S.C. § 636(b), the case was referred by Chief Judge Julian Abele Cook, Jr. to Magistrate Judge Goldman for a Report and Recommendation. On February 7, 1994, plaintiff filed a motion for summary judgment. On February 28, 1994, defendant filed a motion for summary judgment. Plaintiff filed a response to defendant's motion for summary judgment March 7, 1994. On April 22, 1994, Magistrate Judge

---

1. A final administrative decision denying plaintiff's administrative appeal of the January 4, 1993 decision and affirming the decision of the ALJ, was issued June 23, 1993 by the Appeals Council of the Social Security Administration.

Goldman issued a report recommending that this court grant defendant's motion for summary judgment, deny plaintiff's motion for summary judgment, and enter judgment in defendant's favor. On April 28, 1994, plaintiff filed an objection to the magistrate's report and recommendation. Defendant responded to plaintiff's objection May 16, 1994. In deciding whether to adopt a magistrate's report and recommendation on a motion for summary judgment, a district court is to review *de novo* those portions of the report to which objections are made. 28 U.S.C. 636(b)(1). In the instant case, plaintiff objects to the report and recommendation as a whole. Thus, this court must review the motions for summary judgment *de novo*.

## I. Factual Background of Plaintiff's Impairment

Plaintiff's complaint seeks review of the ALJ's decision that she was not disabled between June 28, 1989 and December 31, 1990.

Plaintiff Susan Rajt was born June 20, 1962. She is a high school graduate and has attended three years of college. From 1980 until she became disabled in 1985,[2] plaintiff worked as a nursing home treatment technician/nurse assistant while at the same time attending college.

Plaintiff has a history of progressive idiopathic scoliosis.[3] Plaintiff wore a body brace from the age of thirteen until the age of sixteen. At age sixteen, plaintiff underwent back surgery at which time Harrington rods were inserted in her back. Plaintiff was in body cast for about nine and one-half months following surgery. In 1980, plaintiff underwent another surgery at which time one of the rods and the rod's upper hook were removed. In 1982, another surgery was performed to remove the lower hook of the same rod. In May 1986, plaintiff's fourth vertebrae broke and she underwent a third surgery which involved an anterior spinal fusion of L3 and L4, a diskectomy, and an autoge-

nous bone graft; this surgery was followed immediately by a fourth surgery involving a posterior spinal fusion at L3–L4 and an autogenous iliac bone graft. Since as early as 1986, plaintiff has continually complained of pain in her lower back and legs.

Plaintiff's attending physician, Dr. Daniel L. Morrison, D.O., a board certified orthopedic surgeon, has been treating plaintiff continuously since October 8, 1976. On October 23, 1986, Dr. Morrison wrote a letter indicating that plaintiff had called him and requested approval from him to work at a desk-type job, which approval he gave. In the letter, Dr. Morrison stated that plaintiff "should be sedentary in nature which would involve sitting most of the time." Tr. at 250. In accordance with his approval, in November 1986 plaintiff attempted to work as an accounts receivable/payable clerk, working four to six hours daily for four days per work. She lasted only three weeks, however, because she experienced pain and bilateral numbness, and inflammation of the spinal fusion.[4] Her last day of gainful employment was November 24, 1986.

On February 12, 1987, Dr. Morrison wrote a letter indicating that plaintiff could not work because of limitations in "her ability to spend any time sitting and/or walking." Tr. at 249. He stated that he did "not feel that she is capable of any type of work duty performance status." *Id.* Since that letter, Dr. Morrison has consistently reported that plaintiff is not capable of working in any capacity.

At defendant's request, plaintiff has been examined by independent physicians. On October 24, 1989, Dr. Michael G. Sperl wrote a letter in which he found that plaintiff

> presents … with a clinical finding compatible with a longstanding history of scoliosis with a secondary mechanical lumbar syndrome. Based upon my examination I do not feel that Ms. Rajt could return to her prior employment duties as described. I

---

**2.** Plaintiff previously received Social Security disability benefits for the same impairment from October 24, 1985 through September 11, 1987.

**3.** Scoliosis is defined as an appreciable lateral deviation in the curvature of the spine. Dor-

land's Medical Dictionary at 1390 (25th ed. 1974).

**4.** The employer, United Meat and Deli Corporation, reported that plaintiff was a diligent and exceptional employee. (Tr. 199).

do feel that any type of return should be attended by restrictions including limited repetitive bending, twisting as well as lifting of weights greater than 25 to 30 pounds. I would also advise that she should avoid static posturing such as sitting and/or standing in any one position for any extended period of time greater than one-half hour at a time. Appropriate follow-up with her treating physician would be indicated. I would simply advise conservative measures.

Tr. at 229. On April 25, 1991, Dr. Donald E. Butler, M.D., wrote a letter describing his recent examination of plaintiff. Dr. Butler noted that plaintiff's left hip was low and that plaintiff had a rotational lump of the left lumbar region and a limited range of motion of the back. Dr. Butler noted that her reflexes were normal but that she had a small area in her left foot that had no sensation. Dr. Butler made no assessment of plaintiff's ability to work or of the clinical basis for her claims of pain. On February 26, 1992, Dr. James A. Raikes, M.D. wrote a letter describing his examination of plaintiff on that day. Dr. Raikes reported that plaintiff has "severe scoliosis of the thoracolumbar spine with the convexity to the left." Tr. at 293–94. Dr. Raikes noted that there is "definite asymmetry of [plaintiff's] pelvis when she is in a standing position with the left side of the pelvis about one inch lower than the right." *Id.* He also noted that plaintiff has some numbness in the left foot and has diminished flexion of the back. He found, however, "no evidence of any paraspinal muscle spasm or tenderness." *Id.*

Plaintiff is not taking any medication for pain because she claims that traditional pain killers such as aspirin or Tylenol do not alleviate her pain. Also, she states that, as a practice, she avoids taking any medication, even cold medicine. It is important to note that plaintiff claims to have been experiencing this pain for over six years, that is, since before her 1986 operation until the time of her most recent testimony in November 1992.

## II. Standard of Review

Plaintiff's complaint seeks review of the findings of the ALJ "with reference to the plaintiff's capabilities to engage in sedentary work and the finding ... with reference to the plaintiff not having proven that she had impairments of such severity as to have precluded her from engaging in any substantial gainful activity." [5] Complaint at para. 5. In reviewing an administrative decision by the Secretary of Health and Human Services to deny benefits, Congress has limited the scope of the court's review to whether the Secretary's decision is supported by substantial evidence. *Newkirk v. Sullivan,* 811 F.Supp. 294, 296 (E.D.Mich.1993), *citing* 42 U.S.C. § 405(g) and *Sherrill v. Secretary of Health & Human Services,* 757 F.2d 803, 804 (6th Cir.1985). The Secretary's findings are not subject to reversal simply because there is substantial evidence to support a different conclusion. *Id., citing Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986). Rather, the court may reverse the Secretary's decision only where the court finds that substantial evidence does not exist to support the Secretary's decision. *See id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id., citing Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir.1985); *Beavers v. Secretary of Health, Education & Welfare,* 577 F.2d 383, 387 (6th Cir.1978).

## III. The ALJ's Findings

A hearing was held on November 16, 1992 before the ALJ. The hearing consisted of plaintiff's testimony and the testimony of a vocational expert. The ALJ issued a written decision January 4, 1993. The issue the ALJ decided is whether plaintiff was totally disabled between June 29, 1989 and December

**5.** The Appeals Council simply affirmed the administrative law judge's decision and allowed his January 4, 1993 opinion to stand "as the final decision of the Secretary." Tr. at 4.

31, 1991.[6] In deciding whether a person is totally disabled for purposes of receiving Social Security benefits, the Social Security Regulations provide for a sequential analysis by the ALJ. 20 C.F.R. § 404.1520. Under this analysis, once the ALJ finds that a person has not engaged in any gainful activity in the past twelve months as a result of a severe impairment, and that the person, by reason of her impairment, can no longer engage in her past relevant work, the burden shifts to the Social Security Administration ("SSA") to demonstrate that the person has a residual functional capacity to perform alternative substantial gainful work which exists in the national economy. *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir.1987) (citations omitted); *Varley v. Secretary of Health & Human Serv.*, 820 F.2d 777, 779 (6th Cir. 1987).

In his decision, the ALJ recognized that plaintiff had satisfied her burden of proof with respect to establishing that she was unable to perform her past relevant work at any time through her date last insured of December 31, 1991.[7] The ALJ further recognized that the burden is on the SSA "to identify other jobs during that relevant period of time that the claimant was capable of performing and which existed in significant numbers in the economy." Tr. at 24. The ALJ found that the SSA's burden had been met, predominately through the testimony of the vocational expert.

At the hearing, the vocational expert was first asked whether or not the claimant could perform past work or any other type of work based on the testimony plaintiff had given at the hearing. The vocational expert replied that plaintiff could not work in any capacity given her need to lie down for approximately two to two and one-half hours per day to alleviate the pain in her back. The ALJ then gave the expert the following hypothetical situation:

> an ability to sit for six out of eight hours, stand and walk for two out of eight hours, and lift up to 10 pounds and also assuming ongoing back pain not of a sufficient severity to interfere with the exertional activities described but sufficient to preclude any bending to the floor or excessive twisting or torquing of the torso and any repetitive stooping, squatting, kneeling, or climbing. [The expert] was also to assume that use of the upper extremities was unimpaired but for the need to avoid lifting over the shoulder level, and was to assume that the claimant did not need to lie down on a daily basis and did not have pain sufficient to interfere with the usual and customary aspects of work. [The expert] was to consider that the claimant would need a sit/stand option. The [ ] expert responded that the claimant could not perform her past work ... but could perform unskilled bench work in the areas of sorting, packaging, and simple assembly of which there are approximately 5,000 such jobs in the metropolitan Detroit area and 10,000 in the State.

Tr. at 24–25.

In his decision, the ALJ found that plaintiff has not engaged in substantial gainful employment since June 28, 1989;[8] that plaintiff is unable to perform her past relevant work as a nurse's aide; and that plaintiff suffers from a severe impairment and suffered from such impairment during the relevant time period. The ALJ went on to find, however, that plaintiff has a residual functional capacity with the following limitations: the ALJ found that plaintiff cannot lift over ten pounds on an occasional basis or five

---

**6.** Plaintiff filed a previous benefits claim that was denied on June 29, 1989. Because plaintiff did not appeal that ruling, the parties' agree that plaintiff is precluded under the doctrine of *res judicata* from raising again the issue of her disability prior to June 29, 1989. The relevant period of disability ends December 31, 1991 because that is the date on which plaintiff's status as an insured under the Social Security insurance ran out. (See footnote 7).

**7.** As people work and pay into Social Security, they accumulate a certain amount of coverage under the Social Security program. Plaintiff's covered period ran out as of December 31, 1991. Plaintiff therefore must demonstrate that she was disabled on or before December 31, 1991.

**8.** The ALJ limited his decision to the date of June 28, 1989 because that is the beginning of the period presently at issue. Actually, plaintiff has not engaged in gainful employment in several years.

pounds more frequently; that plaintiff cannot engage in any work that requires any bending, excessive twisting, or torquing of the torso, or repetitive stooping, squatting, kneeling, or climbing or use of the upper extremities above the shoulder level; and that plaintiff cannot do work which requires any prolonged sitting, standing, or walking without the opportunity to sit or stand at will. The ALJ further found plaintiff's contention that she must lie down on a daily basis to be not credible or not consistent with the evidence.

## IV. Analysis of the ALJ's Findings

Sedentary work will generally involve sitting for six hours out of an eight hour work day. *Wages v. Secretary of Health & Human Serv.*, 755 F.2d 495, 498 (6th Cir.1985), *citing Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984). In *Wages*, the United States Court of Appeals for the Sixth Circuit held that where it is determined that a claimant cannot sit or stand for long intervals, but is required to alternate between sitting and standing for comfort, the claimant cannot be found to have the residual functional capacity to perform sedentary work as that term is defined by the Social Security regulations. As noted in the *Wages* case, the Secretary of Health & Human Services, in Social Security Ruling 83–12, made clear that because "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will," an individual who may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting, "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work ... or the prolonged standing or walking contemplated for most light work." *Id.* at 498, *quoting* Soc.Sec.Rul. 83–12.

The facts of *Wages* are distinguishable to the extent that the ALJ in *Wages* was found to have erred by mechanically applying the "grid" laid out in Soc.Sec.Reg. Pt. 404, Subpt. P, App. 2. In Soc.Sec.Rul. 83–12, the Secretary further provided that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." *Id.*

In the instant case, the ALJ did seek the assistance of a vocational expert and properly relied on the grid only as a framework for deciding the disability issue. In requesting an assessment of plaintiff's residual functional capacity, the ALJ provided the vocational expert with a hypothetical situation in which the claimant was capable of sitting for six out of eight hours, capable of standing and walking for two out of eight hours, and capable of lifting up to 10 pounds. The ALJ's hypothetical also provided that the claimant would not need to lie down for any portion of the day and did not have pain sufficient to interfere with the usual and customary aspects of work.

The testimony of a vocational expert in response to a hypothetical question may constitute substantial evidence to support a finding of "not disabled" only if the hypothetical question accurately portrays the plaintiff's individual impairments. *Varley*, 820 F.2d at 779; *Newkirk v. Sullivan*, 811 F.Supp. 294, 297 (E.D.Mich.1993). The hypothetical must accurately describe the plaintiff in all significant relevant respects. *Newkirk, supra.* "A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the plaintiff can perform." *Id.* Thus, the primary issue for review, then, is whether the ALJ's hypothetical question to the vocational expert accurately described plaintiff. The various elements of the ALJ's hypothetical question vary from plaintiff's version of what she is capable of enduring. In order, therefore, for the description to be found accurate, the court must find that there is substantial evidence to support the ALJ's factual findings which were necessary to support the elements of the hypothetical.

Plaintiff testified that she could stand only for a half an hour at a time, and could sit possibly for two hours at a time. Plaintiff testified that she is in constant pain though the level of the pain waxes and wanes. She testified that she usually feels good in the morning but by eleven a.m. or twelve p.m. the pain has intensified to the point that she needs to lie down to relieve it. She further testified that nothing works to ameliorate the pain, save rest and sitting in a whirlpool

(though the pain returns when she removes herself from the pool).

Plaintiff's doctor stated that plaintiff could not sit, stand or walk for any prolonged period of time. Dr. Sperl, who conducted an independent examination, wrote that plaintiff could not sit or stand for more than one-half hour at a time. No doctor stated that plaintiff had the capacity to sit for six of eight hours per day and stand and walk for two hours of the same day.

The ALJ discounted plaintiff's claim that she needs to rest in the middle of the day to alleviate the pain. His basis for discounting her pain was that her claims were "not credible or consistent with the evidence." Congress has established a statutory standard for evaluating subjective complaints of disabling pain.

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; *there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged* and which ... would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques ... must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (emphasis added). To implement this standard, the courts have adopted a two-prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably expected to produce the alleged disabling pain.

*McCormick v. Secretary of Health & Human Serv.*, 861 F.2d 998, 1002–03 (6th Cir.1988). In the instant case, plaintiff has been diagnosed by every physician who has examined her as having *severe* scoliosis and a left hip that is one inch lower than the other. She complains of pain in her lower tail bone area, which is the area where her vertebrae was broken and then fused, and of pain in her legs and numbness in her feet. In discussing the issue of pain, the book *Medical Proof of Social Security Disability*, 1993 Supplement by David A. Morton, III, M.D., states at 356: "Severe back pain can [ ] be caused by disorders such as advanced multi-level osteoarthritis, severe multi-level degenerative disc disease, marked spinal deformities such as scoliosis." The book further states that "significantly abnormal scoliosis ... frequently presents no objective *neurological* abnormalities on physical examination." *Id.* at 357.

In addition to severe scoliosis, plaintiff's own doctor, Dr. Morrison, diagnosed her as of January 19, 1990 as suffering from facet arthritis, radiculitis, and spinal stenosis. Tr. at 243. That diagnosis is supported by the doctor's previous reports. In a letter dated April 20, 1989, Dr. Morrison wrote that plaintiff "seems to have plateaued with regards to her subjective symptamology with back pain and radiation in the left iliac and left lower extremity. It is my feeling that she continues to experience symptamology secondary to that femoral neuritis on the left side." Tr. at 245. In a letter dated October 12, 1989, Dr. Morrison writes that plaintiff's back situation was making progressive changes for which further testing was appropriate. On July 1, 1992, Dr. Morrison indicated that, *inter alia*, plaintiff needs to lie down for substantial periods of the day to alleviate her pain.

■ In reaching the contrary conclusion that plaintiff does not suffer from severe pain, the ALJ relied on the fact that plaintiff does not presently take any pain medication and that plaintiff is able to do some common activities such as driving, and some household chores such as dusting, cooking, and light gardening. However, plaintiff stated in her request for benefits that the pain killers do not alleviate her discomfort. In fact, she

testified that the only thing that alleviates her discomfort is rest and being seated in a whirlpool. Despite plaintiff's claim that she needs to rest to alleviate the pain and despite Dr. Morrison's indication that she needs to lie down, the ALJ made a factual finding that plaintiff does not need to lie down. This factual finding is not based on substantial evidence as there is no conflicting opinion in the record from any other medical expert that states that plaintiff is not experiencing severe pain and no conflicting opinion with regard to her need to lie down.

■ The ALJ also stated that plaintiff's complaints of pain were unsupported by clinical evidence. In so stating, the ALJ discounts years of reports from Dr. Morrison, as well as years of reports from various rehabilitation counselors, documenting her constant and continuous complaints of pain. He also discounts the severe abnormalities in her spine and hip, as well as plaintiff's long history of back surgeries.

As evidence that plaintiff does not suffer as she claims, the ALJ also points to the fact that, on one occasion, in the fall of 1986, Dr. Morrison gave approval for plaintiff to attempt to work in a desk-type job. The ALJ reached the unsupported conclusion that Dr. Morrison was indicating that plaintiff couldn't work merely "to aid [plaintiff] in her quest for benefits." Tr. at 21. Such a conclusion ignores the fact that it was plaintiff's idea in 1986 to attempt going back to work, ignores the evidence that, though plaintiff tried her best to work, the attempt failed,[9] and ignores the consistent reports of Dr. Morrison over a period of more than five years that plaintiff is unable to perform any type of work because of the pain caused by her history of back problems.

The ALJ further supports his factual findings by extracting the slightest of positive reportings from letters of Dr. Morrison, and presenting those extractions out of context. For instance, the ALJ relies heavily on Dr. Morrison's February 12, 1987 writing wherein the doctor allegedly stated that plaintiff "had good healing of her back" after the surgery (Tr. at 21); in fact, the letter says

"As it is now, she seems to have gone on to satisfactory healing on a surgical basis but still has symptamology in low back in bilateral hip area with bilateral radicular pattern." Tr. at 249. The ALJ then notes that Dr. Morrison reported her condition as stable on a clinical basis in an April 20, 1989 writing and reported that her complaints of pain were historical and subjective (Tr. at 21); in fact, Dr. Morrison wrote that plaintiff

> seems to have plateaued with regards to her subjective symptamology with back pain and radiation into the left iliac and left lower extremity. It is my feeling that *she continues to experience symptamology secondary to that femoral neuritis on the left side*.... On a clinical basis, she appeared to be stable with regards to the status of her spinal alignment.... but because of her persistent debility, historically and subjectively it is my feeling that she is relatively unstable at this time ... It is my opinion that she is not suitable for any type of work duty status at this time insomuch as she is rather significantly debilitated.

Tr. at 245–46 (emphasis added). All the medical reports indicate that plaintiff continues to live with severe scoliosis, a spinal deformity. Her doctor says that her condition is "stable." No where does he or any other doctor report that her condition is normal, or that she does not continue to suffer from a painful abnormality of the spine.

## V. Conclusion

For the foregoing reasons, the court finds that whatever minimal evidentiary support there may be underlying the ALJ's factual findings, the evidence he cites in support of his conclusion regarding plaintiff's level of pain does not constitute substantial evidence. Moreover, there is overwhelming evidence that conflicts with, and thereby detracts from, the evidentiary support offered by the ALJ for his conclusion.

Thus, the court finds that the factual assumption underlying the ALJ's hypothetical, that is, that plaintiff could work an eight

9. Plaintiff's employer for that three week period submitted a letter to the vocational experts stating that plaintiff had been an exceptional and diligent employee. Tr. at 199.

hour day, sitting six hours, standing and walking two hours, with a sit/stand option but with no opportunity to lie down, does not comport with the realities of plaintiff's impairment. For this reason, the court finds that plaintiff is disabled as that term is defined by the statute.

## ORDER

Therefore, it is hereby **ORDERED** that plaintiff's motion for summary judgment is **GRANTED.**

It is further **ORDERED** that defendant's motion for summary judgment is **DENIED.**

**SO ORDERED.**